BURFEIND et al. v. EAGLE-PICHER CO. OF TEXAS.

Civ. No. 2390.

District Court, N. D. Texas, Dallas Division.

May 21, 1947.

Mullinax, Barbaria & Hall, of Dallas, Tex., for plaintiffs.

J. Glenn Turner, of Dallas, Tex., for defendant.

ATWELL, District Judge.

This suit was filed on February 13th of the present year, for thirty-four employees of the defendant.

On March 5th, the defendant moved to dismiss, to strike, and, for particulars. On March 10th, the defendant's motion was sustained and thirty days allowed to amend, after which the defendant was to have ten days to reply. On April 10th, an amended complaint was filed. On April 18th, motions to dismiss, and to strike, and for particulars, was filed. On April 25th, the motion to dismiss was overruled and bill of particulars was granted, as to certain allegations. On May 1st, plaintiffs filed a second amended complaint. On May 12th, the defendant filed motions to dismiss, to strike certain portions, for particulars, and, for cost security. On May 19th, a motion to dismiss was added because of an alleged lack of jurisdiction.

Ripened by these orders on dilatory pleas, and continuing to view, as still pleaded, an open hand for such undisclosed employees as might have been in the service, and, in the failure to allege what amount of time was allegedly spent by the plaintiff in interstate commerce, as well as the undeleted and criticized allegation with reference to relief for undisclosed plaintiffs, all of which criticisms are reasserted in these latest motions to strike, and, for particulars, to which is added the request for cost security, I go directly to the new Act which was passed for the relief of such employers as had been working through the years with apparently satisfied and happy employees

who were compensated for the work of the shift, and neither received nor expected any compensation for the few moments of preparation for the entry upon the day's work, nor for the few moments after the shift period in preparing themselves for street appearance.

The suit seems to be for compensation for forty-five seconds for walking from the front gate to the dressing room, fifteen minutes dressing-room toilet, five seconds from that room to the check-in clock, and an approximate similar amount for checking out after the work of the shift was over, and for the departure from the employer's premises. There was no contract, either verbal or written, for such compensation, and no supporting custom.

It cannot be said that the Mt. Clemmons case, 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515, did more than open additional doors for added compensation which neither party had contemplated, for one of the original portal-to-portal cases originated in this circuit and is cited in the Mt. Clemmons case. Tennessee Coal & Iron v. Muscoda Local, 5 Cir., 135 F.2d 320, aff'd 321 U. S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A. L.R. 1014. So, too, the Fifth Circuit, in Super-cold Southwest Co. v. McBride, 124 F.2d 90, laid the rule that the employee must allege the time spent in interstate as well as intrastate commerce, when he engages in both.

The Portal-to-Portal Act of May 14, 1947, 29 U.S.C.A. §§ 251–263, relates not only to claims filed after its passage, but to claims filed prior thereto. The findings and policy made by the Congress as well as the forbiddings of the Act as to future claims, and the definitions of the coverage of the Act, bring the instant action clearly within its terms.

From the face of the pleadings, and the maneuvering of the parties for a position at the starting post, there is no difficulty in concluding that neither employee nor employer at any time, nor in any way, expected to either grant or receive compensation for activities in preparation for work, tidying up and record making for the accuracy of the payroll and the protection of both employer and employee after the day's shift had been completed.

Neither commerce, industry, nor labor can find any basis for complaint against an adjudication which recognizes that which they, themselves, recognized, and for which they received satisfactory compensation, nor with the Congress, nor the President, for saving the country from such troublesome, discouraging, and disconcerting litigation.

Pertinent comments by the House and Senate conferees, which accompanied the Act to the floor of the Congress called attention to the fact that judicial interpretation of the Fair Labor Standards Act indicated a "disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and need-

less litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effect upon the revenues of Federal, State, and local governments would occur."

It also pertinently mentioned the fact that the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., the Walsh-Healey Act, 41 U.S.C.A. § 35 et seq., and the Bacon-Davis Act, 40 U.S.C.A. § 276a, shall not be used in any suit in the courts of the country for the enforcement of any such claims.

 The suggestion, by the plaintiffs, of the unconstitutionality of the Act is not supported by any voice from that great instrument. The Congress has the unquestioned right to regulate the jurisdiction of constitutionally-born inferior courts. It may withdraw the right of such courts to proceed with suits based on rights created by national legislation. Kline v. Burke, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. It also has the power to withdraw from a state court the right to adjudicate causes out of federal statutes. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. Claims for minimum wages, overtime compensation, liquidated damages, and penalties, are not vested property rights within the protection of the Fifth Amendment. They are simply statutory rights and may be withdrawn by the Congress at any time before ripening into final judgment. Norris v. Crocker, 13 How. 429, 14 L.Ed. 210; United States Ex rel. Rodriquez v. Weekly Publications, 2 Cir., 144 F.2d 186; National v. Phoenix, 142 Tex. 141, 176 S.W.2d 564; In re Hall, 167 U.S. 38, 17 S.Ct. 723, 42 L.Ed. 69; Western Union v. Louisville & N., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; Maryland v. Baltimore & O., 3 How. 534, 11 L.Ed. 714.

 It will be remembered that the plaintiffs allege that they have been and still are the employees of the defendant. They sue not only for what they claim as compensation for the time expended in the manner already mentioned, but they also ask for liquidated damages and reasonable attorney's fees as provided in the Fair Labor Standards Act.

The May, 1947 Portal-to-Portal Act especially withdrew the statutory right to such punishment and such penalties either for past, or for future claims, provided the claims did not originate under the describing sections of the Act. The only provisions which would permit such recoveries are when there is an express authority for such recoveries in contract, or, custom, or, practice in effect at the time of such activity.

Accustomed as were our citizens to the disturbing shocks from participation in a World War, with all of its cruelties and destruction, there was, nevertheless, an instant revulsion against this rush to the courts for further compensation for services that had been highly satisfied to those who performed as well as to those who paid. As observed a moment ago, the sustaining of this ultimate motion of the defendant merely recognizes that peace which is necessary between employee and employer, and which is a congenital inheritance from satisfaction evidenced by each until the microbe of technicality threatened a disturbance of the equilibrium that justice is entitled to enjoy.

The motion to dismiss must be sustained.