## STORY et al. v. TODD HOUSTON SHIPBUILDING CORPORATION (STEWART et al., Intervenors).

### Civ. A. No. 2458.

District Court, S. D. Texas, Houston Division.

July 17, 1947.

Sewall Myer, Al L. Crystal and Frank Campbell Fourmy, all of Houston, Texas, for plaintiffs and intervenors.

Kayser, Liddell & Austin and Dwight H. Austin, all of Houston, Tex., for defendant.

KENNERLY, District Judge.

This is a suit, filed January 8, 1947, under the Fair Labor Standards Act of 1938, Section 201 et seq., Title 29 U.S.C.A., by James C. Story and J. T. Kirtley for themselves and for a large number of other persons, all of whom are alleged to be present and/or former employees of defendant, Todd Houston Shipbuilding Corporation (formerly known as the Houston Shipbuilding Corporation), a Delaware corporation. The suit is one which is commonly referred to as a "Portal-to-Portal Suit." On May 2, 1947, B. W. Stewart and a large number of other persons, all of whom are also alleged to be or to have been employees of defendant, were permitted to intervene.

It is alleged that the employment of plaintiffs and intervenors during the period from October 14, 1943, to June 1, 1946, was under and by virtue of a written contract dated October 14, 1943, between defendant and the Houston Metal Trades Council of Houston and/or other collective bargaining representatives, which contract plain-

tiffs and intervenors call upon defendant to produce.[1]

Plaintiffs and intervenors sue for time alleged to have been spent each day during such period between the time of their arrival at defendant's plant on foot or by public or private conveyance (referred to for convenience as "arriving time") and the time they actually began work (referred to for convenience as "starting time"). Also time alleged to have been spent each day during such period between the time they actually quit work (referred to for convenience as "quitting time") and the time they left defendant's plant on foot or by private or public conveyance (referred to for convenience as "leaving time"). They say that between "arriving time" and "starting time" and between "quitting time" and "leaving time", they performed services for defendant for which defendant is liable and required to pay under such Fair Labor Standards Act of 1938 and for which they have not been paid and for which defendant owes them, and which, including wages, damages, and attorneys' fees, they say amounts to the sum of eight million dollars. They pray judgment for that sum.

Plaintiffs and intervenors allege that during the time mentioned (i. e., between "arriving time" and "starting time" and "quitting time" and "leaving time"), they engaged in many activities, i. e., walking, passing through gates, punching clocks, obtaining time cards, changing clothes, procuring or putting away tools, etc.[2]

Defendant on March 31, 1947, filed its Motion to Dismiss, its Motion to Strike, and its Motion for Bill of Particulars,

[1] The allegations with respect to such contract are as follows:

"Complainants further say that their employment hereinbefore referred to by said two respective corporations was under, in accordance with and by virtue of a written contract of date October 14, 1943, entered into, by and between Houston Shipbuilding Corporation and Houston Metal Trades Council of Houston, Texas and with a number of labor unions which were and are affiliated and cooperating organizations with said Metal Trades Council of Houston. That Complainants are members respectively of one of said labor unions and said written contract was made for the use and benefit of Complainants who are in fact and in law parties thereto. That said written contract governed the rates of pay, wages, working conditions, rights, and obligations of Complainants and was binding upon and governed the two corporations hereinbefore named insofar as Complainants' employment herein referred to is concerned from October 14, 1943, continuously until these complainants left the employ of Defendant on or about June 1, 1946, was concerned.

"That an executed copy of said written contract is or should be in the possession of the Defendant. Notice is hereby given to the Defendant to produce said written executed contract upon the trial of this cause otherwise secondary evidence of its contents will be offered by Complainants.

"That Defendant herein, on or about May 1, 1944, assumed and became bound by all of the obligations, duties and responsibilities imposed upon Houston Shipbuilding Corporation by said written contract including the payment of all sums and amounts of money due to Complainants herein and which are herein sued for. Thereafter the Defendant herein continued to employ Complainants under, in accordance with and by virtue of such written contract and said Defendant continued to operate under and enjoy the benefits of said written contract until on or about June 1, 1946, and Defendant is bound and obligated to pay to Complainants the full amount of wages, overtime, double time, and liquidated damages herein sued for by these Complainants. Defendant is now estopped to deny that it is bound and obligated by the terms and provisions of said written contract. That Complainants' causes of action herein pleaded arise out of and are based upon said written contract and exhibits and documents attached to contract and which are made a part thereof. That said written contract, exhibits and other documents attached thereto which are parts of said written contract are made a part of this Complaint as fully as though copied herein in full."

[2] Their allegations are as follows:

"(b) Complainants further say that the time necessarily spent as aforesaid by these Complainants before said scheduled starting times and after said scheduled quitting times during the period beginning October 14th, 1943 and ending June 1, 1946 at and/or upon said premises was consumed by Complainants in work and activities requiring and involving physical and mental exertion by

692

and on June 18, 1947, filed a Supplement Motion. Such Supplemental Motion sets forth that under the 'Portal-to-Portal Act of 1947', 29 U.S.C.A. § 251 et seq., approved May 14, 1947:

(a) This Court is without jurisdiction of the subject matter.

(b) That plaintiffs and ·intervenors fail to state a claim or claims upon which relief can be granted.

1. The jurisdiction of this court in cases arising under the Fair Labor Standards Act of 1938 is defined by the Portal-to-Portal Act of 1947 as follows: "No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, under the Walsh-Healey Act, or under the Bacon-Davis Act, to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section."

Subsections (a) and (b) referred to are as follows:

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis

Complainants and which were controlled or required by Houston Shipbuilding Corporation and Defendant and were pursued by Complainants necessarily and primarily for the .benefit of Houston Shipbuilding Corporation and Defendant and of their business.

"(c) In this connection Complainants say that during each day said Complainants respectively worked as herein pleaded it was necessary for them to travel either by train or by automobile or motor transportation to the said plant where they were employed. Upon the arrival of said trains upon the said premises Complainants and other employees using such means of transportation alighted therefrom upon said premises of Houston Shipbuilding Corporation and of Defendant and were required by their· said employers to pass through certain gates and openings in fences erected adjacent to the places where said trains stopped on said premises and also to deposit in boxes at said openings the sum of 25¢. It was then necessary for said Complainants and other employees to walk across said premises for a distance of several hundred feet to gates in another fence. Armed guards were stationed at the gates in this second fence and time was necessarily consumed by Complainants and other employees in passing in single file through said gates and in being inspected by such armed guards. . That approximately sixteen thousand employees passed through said gates on each Seven O'Clock A.M. to Three O'Clock P.M. shifts. ·

"Complainants further say that after passing through said last above referred to gates, these Complainants and other employees on each shift walked a short distance to the time clock alleys where each employee procured his time card from the time card board and punched a time clock and then returned his time card to its proper place on the time card board. Said Complainants and other employees, with the exception of painters and those employees using special tools in their work, after leaving the time clock alleys walked to their respective places of work within the plant the distances to which places of work varied from a hundred feet to more than a quarter of a mile.

"The painters, after punching the time clocks, then walked to a change or locker room where they changed clothes and then walked to their respective work stations.

"Those employees using special tools in their work after punching the time clocks then walked to the tool house and were issued their special tools and then walked to their respective places of work.

"Complainants further say that practically the same activities and routine is followed by each Complainant and all other employees who used automobile and other means of motor transportation to reach the premises and plant of Houston Shipbuilding Corporation and of the Todd-Houston Shipbuilding Corporation with the exception that the automobiles and other motor vehicles so used by them were parked on said premises in spaces provided therefor by their said employers and at distances varying from approximately one hundred feet to one-half mile from the gates above re-

Act (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

"(b) For the purposes of subsection (a), an activity shall be considered as compensable under such contract provision or such custom or practice only when it was engaged in during the portion of the day with respect to which it was so made compensable."

█ It is plain that in passing the Portal-to-Portal Act, it was the intention of Congress to deprive the Courts of juris-

---

ferred to at which such armed guards were stationed.

"After parking their automobiles and other motor vehicles it was necessary for Complainants to walk from the places where their said automobiles were parked to the gates in the fence where said armed guards were stationed. After passing through said last referred to gates said Complainants followed the same routine and pursued the same activities as the other Complainants hereinbefore referred to. That it was necessary for Complainants to and Complainants in fact did do all of the things and acts hereinbefore referred to prior to the scheduled work starting times.

"(d) These Complainants further say that at the end of each work day period the Complainants and other employees during all times hereinbefore mentioned between October 14, 1943, and June 1, 1946, were required by their said employers, with the exception of painters and those employees using special tools in their work, to proceed from their respective work stations, sometimes referred to herein as places of work, and walk to points near the time clock alleys and there to form into lines and then walk into the time clock alleys and remove their respective time cards from the time card board and punch the time clocks and return their time card to its proper place on said board and then to walk in single file with other employees to the gates in the fence where the armed guards were stationed and to file past and be inspected by such armed guards and then to walk to their respective automobiles or other motor vehicles parked as aforesaid. Those using the trains for transportation walked on said employers' premises from said gates where the armed guards were stationed to the gates in the fence adjacent to the trains and there deposited their train fare and then walked to and got aboard said trains. That it was necessary for Complainants to and Complainants in fact did do all of the acts and things hereinbefore referred to after the scheduled work quitting times.

"The activities and routine of the painters at quitting times differed from the other Complainants herein only in the following particulars:

"After leaving their work stations at the end of the work day the painters walked to the change or locker rooms and there removed their work clothes and because of the nature of their work it was necessary to and they did in fact wash and clean their bodies before dressing in their street clothes and after putting away their work clothes and dressing in their street clothes they then walked to the lines of employees formed at the time clocks and then passed through the time clocks and by the guards and to their vehicles of transportation as did the other Complainants herein.

"The activities and routine of the Complainants who used special tools in performing their work differed at quitting time from the other Complainants herein, save and except the painters, in the following particulars:

"Such Complainants carried their special tools to the tool house and checked them in and then walked to the lines being formed at the time clocks and their activities thereafter were the same as the other Complainants herein."

694

diction of cases of this character, save and except where there is alleged a custom or contract such as is set forth in Subsections (a) and (b) above quoted. An examination of plaintiffs' and intervenors' complaint discloses that they do not allege a cause of action of which this Court now has jurisdiction. There is no allegation of a custom or practice under which defendant is liable to plaintiffs and intervenors, and while they plead a written contract, they do not plead an express provision thereof showing such liability. Under the Portal-to-Portal Act of 1947, this Court no longer has jurisdiction of this case.

2. But plaintiffs question the constitutional validity of the "Portal-to-Portal Act."

■ The jurisdiction of this Court is fixed by Statute, and not by the Constitution. The cause of action of plaintiffs and intervenors, if any they have, is given them by Statute—by the Fair Labor Standards Act of 1938. By such Act, jurisdiction of such cause of action was conferred upon this Court.[3] Such jurisdiction may be wholly or in part taken away, changed or modified, without violating any of the provisions of the Constitution. It has been in part taken away and changed by the "Portal-to-Portal Act" so that this Court now has jurisdiction only of suits which are brought for a liability fixed by Subsections (a) and (b), quoted above, of the "Portal-to-Portal Act." Such Act is not constitutionally invalid. Bowles v. Willingham, 321 U.S. 503, 505, 64 S.Ct. 641, 88 L.Ed. 892; Kline v. Burke Construction Co., 260 U.S. 226, 227, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Western Union Telegraph Co. v. Louisville & N. Ry. Co., 258 U.S. 13, 15, 42 S.Ct. 258, 66 L.Ed. 437; United States ex rel. Car-

lisle v. Hammond, 5 Cir., 99 F.2d 557, 558; Norris v. Crocker, 13 How. 429, 430, 14 L.Ed. 210; 35 C.J.S., Federal Courts, § 4, pages 776 to 779; 36 Corpus Juris, Page 512; Ex parte McCardle, 7 Wall. 506, 19 L.Ed. 264; Seligman's, Inc. v. United States, D.C., 30 F.Supp. 895; Taylor v. Brown, Em.App., 137 F.2d 654; Lauf v. E. G. Shipner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; Milk Wagon Drivers Union v. Lake Valley Farm Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Sherr v. Anaconda Wire & Cable Co., 2 Cir., 149 F.2d 680; Rodriguez v. Weekly Publication, 2 Cir., 144 F.2d 186; In re Hall, 167 U.S. 38, 17 S.Ct. 723, 42 L.Ed. 69; National Carloading Corp. v. Phoenix-El Paso Express, 142 Tex. 141, 176 S.W.2d 564; Messick v. Southern Pennsylvania Bus Co., D.C., 59 F.Supp. 799; Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135.

■ 3. But even if there still be jurisdiction here, a further examination of plaintiffs' and intervenors' complaint discloses that it does not under the "Portal-to-Portal Act" state a claim or claims upon which relief can be granted In order to state such a cause of action, plaintiffs and intervenors must plead "an express provision of a written or nonwritten contract in effect, at the time of such activity," or plead a custom or practice in effect at the time of such activity, making such activity compensable. This, they have not done.

It follows that the case must be dismissed.

Let appropriate order, dismissing same, be drawn and presented.

---

[3] Subparagraph (b) of Section 216, Title 29, is as follows: "(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."