**ACKERMAN et al. v. J. I. CASE CO.**

Civ. No. 4254.

District Court, E. D. Wisconsin.

Nov. 5, 1947.

Meyers, Meyers & Rothstein, of Chicago, Ill. (Ben Meyers and Edmund Hatfield, both of Chicago, Ill., and Bernard Jaffe, of New York City, of counsel), for plaintiffs.

Howard R. Johnson and Clark M. Robertson, both of Milwaukee, Wis., for defendant.

Tom Clark, Atty. Gen., Peyton Ford, Asst. Atty. Gen., and Timothy Cronin, U. S. Atty., of Milwaukee Wis., for the United States.

DUFFY, District Judge.

This is an action brought by plaintiffs upon behalf of themselves and other employees of the defendant similarly situated. The complaint alleges that said employees have performed acts which constitute work for which defendant has not made payment in accordance with the terms of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Plaintiffs allege that defendant scheduled the starting and quitting time for each employee, that defendant required each employee to be at his place of work at such starting time and to remain there until quitting time, that it was necessary for each employee to arrive at the premises of defendant during a period before the scheduled starting time and to remain after the scheduled quitting time.

The acts which plaintiffs claim constituted work for which they were not compensated are listed in the complaint in the following categories: (1) entrance to the property of defendant through gates, doors and passageways controlled by the defendant, subject to rules and regulations of the defendant; (2) employees were required to enter the plant of defendant through entrances created by defendant and were required to punch time clocks at designated points on the premises of defendant prior to reporting to the place where each employee performs his regular duty, and that from the entrance to the time clocks and thence to the place of work, the employees travel by various means under routes controlled by the defendant; (3) that after quitting time the employees must leave in a similar manner in reverse order; (4) that before starting work and because of the nature of their work and the rules and regulations of defendant, the employees are required to change into work clothes, protective clothing and to store their other clothes in lockers or other receptacles as required by defendant; (5) that the employees must obtain equipment and make other necessary preparations for work prior to starting time; (6) that at the end of the work day the employees change clothing and clean and put away equipment; (7) that upon leaving for and returning from the lunch period the employees have been required to engage in activities similar to those which they perform before starting and after quitting time; (8) that the employees have to eat their meals in defendant's cafeterias, lunchrooms and similar eating establishments maintained by the defendant or concessionaires under contract, and are required by defendant to eat their meals off the premises of the defendant whether or not they carry their own meals or purchase a meal in an eating establishment; (9) the employees are frequently required to stand in line and otherwise wait in order to perform activities hereinbefore specified.

This action was commenced prior to the enactment of the Portal to Portal Act of

1947, Act of May 14, 1947, Public Law No. 49, 80th Cong., 1st Sess., Ch. 52, 29 U.S.C.A. § 251 et seq. Thereafter, on June 23, 1947, the defendant moved for a dismissal on the ground that the complaint fails to state a claim against the defendant upon which relief can be granted, and further that the court lacks jurisdiction of the subject matter. Subsequent to the filing of this motion, plaintiffs gave notice they desired to question the constitutionality of certain portions of the Portal to Portal Act of 1947. The United States Government was notified and thereafter filed a petition to intervene, which was granted. Plaintiffs then petitioned to have employees whose names were set forth in Schedule B annexed to the complaint made parties plaintiff upon the filing of proper authorization, and such petition was granted.

Plaintiffs oppose the motion to dismiss the complaint and place their principal emphasis upon their claim that the so-called retroactive features of the Portal to Portal Act of 1947 are unconstitutional. However, plaintiffs also urge: (1) the defense under the Portal to Portal Act should be raised by answer rather than by motion to dismiss; (2) that the fundamental basis for federal jurisdiction is adequately alleged in the complaint and that at the time this action was commenced this court clearly had jurisdiction; and (3) that it may develop at the trial that a claim exists which is cognizable even in face of the Portal to Portal Act.

Other courts have granted motions to dismiss complaints in similar cases. Cochran, et al. v. St. Paul and Tacoma Lumber Co., et al., D.C., 73 F.Supp. 288; Boehle v. Electro Metallurgical Co., D.C., 72 F.Supp. 21; Story, et al. v. Todd Houston Shipbuilding Corp., D.C., 72 F.Supp. 690; Fajack v. Cleveland Graphite Co., D.C., 73 F.Supp. 308; Lasater v. Hercules Powder Co., D.C., 73 F.Supp. 264; White House, et al. v. American Rolling Mill Co., D.C., S.D.Ohio, 1947;[1] Burfeind v. Eagle-Picher Co., D.C., 71 F.Supp. 929.

Defendant's motion to dismiss raises the question of jurisdiction which must be met whenever it is raised. Federal Rules of Civil Procedure, rule 12(b) (28 U.S.C.A. following section 723c) permits raising the question of jurisdiction by motion. Therefore we shall proceed to a consideration of plaintiffs' claim that the Portal to Portal Act of 1947 is unconstitutional.

Plaintiffs, arguing that the Portal to Portal Act of 1947 is unconstitutional in so far as it purports to destroy causes of action which accrued prior to its passage and to deny courts jurisdiction over suits theretofore commenced, urge three principal grounds: (1) that it represents an attempt by Congress to exercise judicial power and thus deprive the plaintiffs of their property without due process of law; (2) that it deprives the plaintiffs herein of their property and vested rights without due process of law; and (3) that the Act did not constitutionally deprive the court of jurisdiction to enforce the plaintiffs' claims. In addition, plaintiffs urge that the finding of an "emergency" by Congress cannot justify the invasion of plaintiffs' constitutional rights and that the Portal to Portal Act of 1947 is a violation of the limitations written into the Fifth Amendment in that it is arbitrary and unreasonable and designed to further no legitimate Congressional purpose.

In Section 1 of the Portal to Portal Act of 1947, Congress makes the following findings:

"(a) The Congress hereby finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially, in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit

---

1 No opinion for publication.

of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

"The Congress further finds that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce.

"The Congress, therefore, further finds and declares that it is in the national public interest and for the general welfare, essential to national defense, and necessary to aid, protect, and foster commerce, that this Act be enacted.

\* \* \* \* \* \*

"(b) It is declared to be the policy of the Congress in order to meet the existing emergency and to correct existing evils (1) to relieve and protect interstate commerce from practices which burden and obstruct it; (2) to protect the right of collective bargaining; and (3) to define and limit the jurisdiction of the courts."

Plaintiffs insist that the finding by Congress that the Fair Labor Standards Act of 1938 has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, coupled with Section 2 of the act which relieves the employers of liability for past portal to portal claims, is an attempted judicial overruling by Congress of the decision of the Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, and prior cases.

The decision in the Mt. Clemens Pottery case, supra, was in no way based upon customs, practices, or contracts. It contained no intimation that the liabilities created by the provisions of the Fair Labor Standards Act of 1938, as the court construed it, were expected by employers. The court's interpretation undoubtedly came as a great surprise to both employers and employees, and, I can say with considerable assurance, it was a surprise to at least some of the members of the Congress who voted for passage of the Fair Labor Standards Act of 1938.

The Portal to Portal Act of 1947 assumed prior validity of so-called portal to portal claims under the Fair Labor Standards Act of 1938, as interpreted by the Supreme Court. The Portal to Portal Act did not make portal to portal claims void ab initio, nor require the repayment of any money which had been paid in reliance on the court's interpretation. Contracts and practices which arose as a consequence of the Fair Labor Standards Act were not affected. Final judgments for portal to portal pay, even if unsatisfied, are still valid. Congress legislated with reference to an existing state of affairs, by terminating certain existing statutory claims which, while based on past activities, were nevertheless existing claims at the time the Portal to Portal Act was passed.

There is no sound basis for saying that the findings and declaration of policy by

Congress in the Portal to Portal Act of 1947 are arbitrary or capricious; and since they are not, they are binding upon the courts. Under such circumstances the contention of the plaintiffs that the act is unconstitutional as an usurpation of judicial power is without merit.

 Plaintiffs further contend that the Portal to Portal Act of 1947 is unconstitutional in that it deprives the plaintiffs of their property and vested rights without due process of law, in violation of the Fifth Amendment. Plaintiffs rely on such cases as Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647; Osborn v. Nicholson, 13 Wall. 654, 80 U.S. 654, 20 L.Ed. 689; Steamship Co. v. Joliffe, 2 Wall. 450, 69 U.S. 450, 17 L.Ed. 805. The provision under the Fair Labor Standards Act of 1938 which enables a workman to recover liquidated damages plus attorney fees, in addition to his unpaid wages, may be considered in the nature of a gratuity. True, the Supreme Court has held that the liquidated damage provision was not penal in its nature (Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682), but that holding does not preclude the view that the provision for liquidated damages and attorney fees as part of the remedy is gratuitous in its nature. The courts have held that veterans benefits such as pensions and compensation allowances are gratuities, and establish no vested rights in the recipient. In Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, at page 209, the court said: "* * * There can be no doubt that veterans' benefits are gratuities and establish no vested rights in the recipient. * * * And this being so, such benefits may be withdrawn at any time by act of Congress, and to make the withdrawal effective, Congress may in turn withdraw jurisdiction from the courts over decisions of the Administrator in relation thereto. * * * If, therefore, Congress has by the passage of the act withdrawn jurisdiction, it is of no consequence that the act became effective after the trial below and during the pendency of the appeal in this court, for the rule is well established that, where jurisdiction conferred by statute is prohibited by a later statute, jurisdiction ceases and causes pending at the time of the later enactment must be dismissed. * * *"

Congress, having established as part of the remedy the provision for liquidated damages and attorney fees, could constitutionally change that remedy at any time, even after suits brought under the Fair Labor Standards Act had been commenced.

As to the claim for recovery of unpaid wages under the Fair Labor Standards Act, we shall consider both contentions of the plaintiffs that the claim is a vested property right and further that the Portal to Portal Act unconstitutionally deprived the court of jurisdiction to enforce plaintiffs' claims.

In Kline v. Burke Constr. Co., 260 U.S. 226, at page 234, 43 S.Ct. 79, at page 82, 67 L.Ed. 226, 24 A.L.R. 1077, the court said; "* * * Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. * * * And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall. Assessors v. Osbornes, 9 Wall. 567, 575, 19 L.Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right. * * *"

In a case testing the validity of legislation abrogating claims based upon gold clauses in private bonds, the Supreme Court in Norman v. Baltimore and Ohio Railroad Co., 294 U.S. 240, at pages 307, 308, 55 S.Ct. 407, 416, 79 L.Ed. 885, 95 A.L.R. 1352, said: "* * * Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but, when con-

tracts deal with a subject-matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them. See Hudson County Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann. Cas. 560."

It will be observed that in the Portal to Portal Act of 1947 Congress does not attempt to interfere with the enforcement of claims except those sought to be asserted under its prior legislation. The provision of the act is: "No employer shall be subject to any liability * * * under the Fair Labor Standards Act of 1938, as amended, * * * except * * *." Any claim which can be asserted independently of the prior legislation is not affected. Moreover, claims based upon activities which were compensable under express provisions of written or unwritten contracts, or by custom or practice, continue to be enforceable under the Fair Labor Standards Act. No contract rights have been taken from the plaintiffs.

The suggestion is made that while the claims barred by Section 2 of the Portal to Portal Act may not be contract claims in the ordinary sense, yet they partake of the contract of employment because all contracts are entered into with implied reference to the existing laws bearing upon the contractual relationship. While this may be true, such contracts are also entered into with implied reference to the power of Congress or the legislature to change such existing laws. As the Supreme Court said, "they have a congenital infirmity." It is clear that rights arising from and depending upon legislation alone may be terminated at the will of the legislative body.

■ Article I, Section 8, of the United States Constitution gives Congress the power to regulate interstate commerce. Congress has found that the continued validity of portal to portal claims would constitute "a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce." The end sought by Congress is a proper one; in fact it is the same one sought in the enactment of the Fair Labor Standards Act of 1938. In American Power and Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 99, 67 S.Ct. 133, 139, the Supreme Court said: "Congress, of course, has undoubted power under the commerce clause to impose relevant conditions and requirements on those who use the channels of interstate commerce so that those channels will not be conduits for promoting or perpetuating economic evils. * * * Congress may act directly with respect to that business to protect what it conceives to be the national welfare. * * *"

In Louisville and Nashville Railroad Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, the court held that a contract, valid when made in 1871, for the giving of a free pass by an interstate carrier, in consideration of a release of a claim for damages, could not be enforced after Congress had passed the Act of June 29, 1906, 34 Stat. 584, 49 U.S. C.A. § 1, which prohibited the issuance of passes. It has also been settled by the decisions of the Supreme Court that no previous contracts or compensations can prevent the application of the Anti-Trust Acts, 15 U.S.C.A. § 1 et seq., to compel the discontinuance of compensations declared by Congress to be illegal. Addyston Pipe and Steel Co. v. United States, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136; United States v. Southern Pacific Co., 259 U.S. 214, 42 S.Ct. 496, 66 L.Ed. 907.

■ I conclude that even without its plenary power to terminate portal to portal claims by withdrawing legislative support, Congress had the power to do so by the exercise of its powers over interstate commerce.

■ I am also of the opinion that Congress acted within its constitutional authority in relieving the courts of jurisdiction to hear and determine portal to portal claims. Under Article 1, § 8, cl. 9, and Art. III, § 1 of the United States Constitution, Congress was clearly given the power to define the cases in which judicial power could be exercised. Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077.

The various contentions of plaintiffs have been carefully considered. The only one requiring any further discussion is the argument that the motion to dismiss should be denied because it may develop at the trial that a claim exists which is cognizable even in face of the Portal to Portal Act of 1947. This contention cannot be sustained. I have heretofore set out in detail a statement of the kind of "work" which the complaint sets forth as the basis of the plaintiffs' claims. The complaint discloses a typical portal to portal suit. The attorneys for plaintiffs intended it as such, and in fact in their brief filed with this court on a previous motion they stated that the complaint herein "does state a cause of action under the terms of a well known recent decision of the Supreme Court of the United States (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515)," and in said brief also stated "their claim was for unpaid 'portal-to-portal' time." The plaintiffs herein do not claim any compensation based upon a contract, written or unwritten, or on custom or practice.

An order may be entered dismissing the complaint because it fails to state a claim upon which relief can be granted and because this court lacks the requisite jurisdiction.