**SMITH v. CUDAHY PACKING CO.**

**SCHEMPF v. ARMOUR & CO.**

**PARENTEAU v. SWIFT & CO.**
Civil Actions Nos. 935–937.

District Court, D. Minnesota,
Third Division.

Dec. 12, 1947.

George W. Colburn, of Minneapolis, Minn., and John Edmund Burke, of St. Paul, Minn., for plaintiffs.

Loring M. Staples and John S. Pillsbury, Jr., both of Minneapolis, Minn., for defendant Cudahy Packing Co.

Cleon Headley, Harvey Hoshour, and David W. Raudenbush, all of St. Paul, Minn., for defendant Armour & Co.

Grannis & Grannis, of South St. Paul, Minn., and Ray E. Cummins, of St. Paul, Minn., for defendant Swift & Co.

DONOVAN, District Judge.

Plaintiffs "individually and as agent and as representative of all other employees of defendant corporation similarly situated" commenced action against The Cudahy Packing Company on October 19, 1945, and against Armour and Company and Swift & Company on October 20, 1945, to recover overtime compensation and liquidated damages under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. For convenience the defendants will be referred to as Cudahy, Armour and Swift. Subsequent to the commencement of the actions, other plaintiffs were added by order of the Court. D.C., 5 F.R.D. 294, 298, 299.

By answer defendants pleaded in bar:

(a) The two-year statute of limitation (32 Minn.Stat.Ann. §§ 541.07(5), 541.071). In the event that said two-year statute of limitation was held unconstitutional or inapplicable, then defendants further pleaded:

(b) The three-year statute of limitation directed against claims for liquidated damages (32 Minn.Stat.Ann. § 541.06), and

(c) The six-year statute of limitation (32 Minn.Stat.Ann. § 541.05).

Following plaintiffs' motions to strike said pleas in bar, the Court, denying the motions, held the two-year statute of limitation applicable in the instant cases. See Smith v. Cudahy Packing Co., D.C., 73 F. Supp. 141.

Defendants served notices of motions in the alternative for a dismissal, or for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. The motions were supported by affidavits and came on for hearing at a special term of this Court on September 22, and again on September 30, 1947. The defendants based said motions on the pleaded statutes of limitation and the Portal-to-Portal Act of 1947, 29 U.S.C.A. §§ 251 to 262 inclusive, hereafter referred to as the Portal Act. The specific grounds for the granting of the motions assigned by the defendants were (a) lack of jurisdiction over the subject matter, and (b) the complaints fail to state claims upon which relief can be granted.

At the conclusion of the oral argument of the motions for dismissal or summary judgment, plaintiffs moved to amend their complaints by adding the following allegation:

"That the working time and work activities for which suit is brought in this action were compensable by express provisions of non-written or written contracts in effect at the time such work activities were performed by the plaintiffs herein, and that such work and activities were compensable by a custom or practice in effect at the defendant's establishment during the time for which compensation is claimed and which custom and practice in effect at the establishment during the time for which compensation was claimed by the plaintiffs was not inconsistent with the written or unwritten contract."

Subsequently a pre-trial conference was held and the Court, in shaping up the issues for determination on the pending motions, among other things, said:

" * * * in the event the Portal-to-Portal Act is held constitutional by the Court, then I think in the light of the importance of these cases to both parties * * * that every question that has been raised and that can be included in the motions now pending before the Court should be disposed of by the Court so that in the event of an appeal, there will be less expense to all parties and there will be no necessity for going up a second time to review matters that can now be disposed of.

" * * * Has the two-year statute of limitations with its companion retro-active

statute run against the claims of any or all of the plaintiffs? This involves the question of whether the word "passage" as used in the statute has reference to the time the bill was passed by the House and Senate on April 18, 1945, or whether it means the date of approval by signature of the Governor on April 23, 1945.

\* \* \* \* \* \*

"The next point that the Court will consider in the motions, if the Portal-to-Portal Act is held constitutional, is whether it applies to the three cases now before the Court under the motions made by the defendants for a dismissal or for summary judgment.

\* \* \* \* \* \*

"Paragraph 14 of the complaint reads as follows:

" 'That after the date of the Act, referred to above, defendant corporation employed plaintiff and the other employees herein referred to, in commerce and in the production of goods for commerce and did not compensate him and them for certain hours worked by them, which will be hereinafter more specifically described, to-wit:

" 'That plaintiff and the other employees herein referred to were compelled to change his and their clothes before recording their time when he and they commenced their employment each day at defendant corporation's premises and plaintiff and the other employees mentioned herein were compelled to change their clothes after recording his and their time when he and they finished work each day at defendant corporation's premises; that plaintiff and all the other employees mentioned herein were required to work changing clothes one hour each per day and which time spent constituted hours worked for which the company failed and refused to compensate plaintiff and other employees herein referred to whatsoever.

" 'That plaintiff and other employees referred to herein were required to sharpen knives and otherwise prepare for use other materials necessary to carry on the activities of the business of the defendant corporation and which time spent sharpening knives and otherwise preparing materials for use on the defendant corporation's premises constituted hours worked by the plaintiff and the other employees herein referred to and which time worked amounted to one hour each per day for which time the defendant company failed and refused to compensate plaintiff and other employees referred to herein whatsoever.'

"Now that paragraph has been amended by the order of the Court dated October 16, 1947. The situation of the plaintiffs has not changed otherwise than as expressed by paragraph 14 of the complaint as amended.

"Mr. Colburn: I believe that is substantially correct."

The record of the instant case is limited to the facts alleged in the complaints as amended, and the allegations and admissions of the answers in each case, augmented by the affidavits referred to.

The complaints are specifically directed at defendants' failure to pay their employees compensation for time spent on defendants' premises during which the nature of their employment required them to change from their street clothes to work clothes, and to engage in duties preparatory to their work such as sharpening knives and doing similar things necessary to the carrying out of their work. The complaint makes clear that all of these activities were preliminary to the employees' principal activity.

The supporting affidavits of the defendants were to the effect that no custom or practice covering the compensation or wages for or on account of time spent by employees in changing clothes or sharpening knives, or otherwise preparing materials for use ever existed; and further, that defendants did not become parties to any contract, written or nonwritten, with any of their employees, or with their bargaining representatives or agents wherein or whereby defendants agreed in any way to pay compensation or wages for or on account of time spent by employees in changing clothes or sharpening knives, or otherwise preparing materials for use, except as provided under the terms of an agreement dated June 5, 1945. Defendants contend said agreement was in force and effect at all times mentioned in the com-

578

plaints and that the agreement was adhered to and complied with. Defendants claim that all time recognized as compensable under contract or customs and practices has been fully paid pursuant to said agreement as approved by the War Labor Board's Directive Order of February 20, 1945.

The employee affidavits in each case are to the effect that there has been a contract, as well as a custom and practice in effect covering compensation for or on account of time spent by employees herein sued for.

Defendants make the point that the two-year statute of limitation has run against plaintiffs' claims. Defendants argue that the effective date of the two-year statute of limitation is the date of "passage" of the statute, and that this has specific reference to April 18, 1945, the date of the "passage" of the bill by the House and Senate, and further, that compliance with the Court's order of March 14, 1946, does not relate back to the date of the commencement of the actions on October 19 and 20, 1945.

Contending the limitation statute has not run against their claims, plaintiffs urge two points:

(a) That the two-year statute of limitation did not become effective until signed by the Governor on April 23, 1945;

(b) That compliance with the order of the Court of March 14, 1946, related back to the commencement of the action on October 19, 1945, as to the Cudahy case, and on October 20, 1945, as to the Armour and Swift cases.

■ The Court adopts the view of plaintiffs and holds that the word "passage" means approval by signature of the Governor on April 23, 1945, and that the controlling statute of limitation took effect at 12:01 a. m., April 24, 1945. See Minnesota Statutes 1945, and M.S.A. §§ 645.02, 645.14. Johnson v. Fay, 82 Mass. 144, 16 Gray, 144, 145; Jackson v. State, 101 Ark. 473, 142 S.W. 1153.

■ The Court further holds that compliance with its order of March 14, 1946, relates back to the commencement of the actions on October 19 and 20, 1945. Wright

v. United States Rubber Co., D.C., 69 F. Supp. 621; Culver v. Bell & Loffland, Inc., 9 Cir., 146 F.2d 29.

The next point advanced by defendants in support of the pending motions is that the claims of all the plaintiffs (approximately 1700) are subject to the infirmity condemned by the Portal Act.

In opposition to this point, plaintiffs argue that a trial of the 1700 claims may establish that they are cognizable under the Fair Labor Standards Act, even in the face of the Portal Act, and that in any event the Portal Act is unconstitutional.

Is the Portal Act unconstitutional? An intelligent approach to this important question suggests the desirability of reviewing that part of the Act cogent to the actions disclosed by the pleadings.

The Portal Act became law on May 14, 1947. Section 252 provides:

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after May 14, 1947), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to May 14, 1947, except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

"(b) For the purposes of subsection (a) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only

when it was engaged in during the portion of the day with respect to which it was so made compensable."

It relates to claims arising before and after its passage, and includes a statement as to the findings and policy of Congress in such a way as to bring the case at bar within its clearly expressed phraseology.

■ The amendment to the complaints, consisting of a general allegation that the compensation here sued for was based on "express provisions of nonwritten or written contracts in effect at the time such work activities were performed by plaintiffs herein, and that such work activities were compensable by custom or practice" in my opinion is not sufficient to avoid the very specific prohibition of the Portal Act. The affidavits furnished by plaintiffs do not add what the complaints lack in plaintiffs' cases, so as to circumvent what Congress clearly withdraws. Burfeind et al. v. Eagle-Picher Co. of Texas, D.C.Tex., 71 F.Supp. 929; Boehle v. Electro, etc., Co., D.C.Or., 72 F. Supp. 21; Seese et al. v. Bethlehem Steel Company, D.C.Md., 74 F.Supp. 412.

Does the Portal Act conform to our Federal Constitution? Plaintiffs vigorously contend the accused legislation violates Article III thereof, in that Congress, by enacting the Portal Act, attempts to exercise judicial power. Further, that it deprives plaintiffs of their property without due process of law, thereby violating the Fifth Amendment.

In a printed brief of 89 pages, reflecting scholarly research and profound learning, counsel for plaintiffs argue that:

(1) "The Portal-to-Portal Act of 1947 represents an attempt by Congress to exercise judicial power in violation of Article III of the Constitution of the United States: It thus deprives the plaintiffs of their property without due process of law in contravention of the Fifth Amendment.

(2) "The Portal-to-Portal Act of 1947 is unconstitutional in that it deprives the plaintiffs herein of their property and vested rights without due process of law in violation of the Fifth Amendment.

(3) "The provisions of the Portal-to-Portal Act purporting to affect the jurisdiction of the Courts cannot serve to validate the deprivation of plaintiffs' rights under the Fifth Amendment.

(4) "The Congressional finding of an 'emergency' cannot justify the invasion of plaintiffs' constitutional rights.

(5) "Even if Congress could, under any circumstances, destroy such vested rights as the plaintiffs here possess, the Portal-to-Portal Act is still a flagrant violation of the limitations written into the Fifth Amendment, for, as here applied, apart from all other considerations, it is patently arbitrary and unreasonable, is clearly designed to further no legitimate Congressional purpose, is calculated only to benefit one group in the population at the expense of another."

That the complaints herein stated a cause of action within the Fair Labor Standards Act of 1938, 29 U.S.C.A. 201 et seq., when the present cases were commenced, is not seriously questioned. Tennessee Coal Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewel Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1519.

■ In adopting the Fair Labor Standards Act, Congress exercised its power to regulate interstate commerce. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. Exercise of that same power would permit Congress to amend or repeal the Fair Labor Standards Act. If it repeals the Act without a saving clause directed at all existing claims or cases, such claims or cases would fall with the repeal of the Act.

Describing the existence of an emergency, Congress passed the Portal Act withdrawing from Federal Courts jurisdiction of portal-to-portal claims under the Fair Labor Standards Act unless compensable under existing contract, custom or practice.

Plaintiffs particularly challenge the power of Congress to repudiate "rights vested under a statute within the protection of the Constitution." They complain that a remedy given them by statute was taken away from them by passage of the Portal Act,

which thereby deprives them of their property without due process of law. They contend that Congress destroyed "obligations already due and payable," and further, that the Portal Act "insofar as it obliterated existing liabilities * * * has no relation to the exercise of the commerce power at all." The foregoing summarized plaintiffs' criticism of the Portal Act.

Has Congress the right to deprive this Court of jurisdiction in the manner directed by the Portal Act? I do not think there is any doubt of the power of Congress so to do, for the reason that this Court:

" * * * derives its jurisdiction wholly from authority of Congress. * * * And the jurisdisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; *if withdrawn without a saving clause all- pending cases though cognizable when commenced must fall.* The Assessors v. Osbornes, 9 Wall. 567, 575, 19 L.Ed. 748. *A right which thus comes into existence only by virtue of an Act of Congress, and which may be withdrawn by an Act of Congress after its exercise has begun, cannot well be described as a con-. stitutional right.* (Emphasis supplied.) Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077.

The foregoing quotation from the Kline case is controlling. Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; Burfeind v. Eagle-Picher Co., supra; Bartels v. Sperti, Inc., D.C.N.Y., 73 F. Supp. 751; Boehle v. Electro, etc., Co., D.C.Or., supra.

See also Cochran v. St. Paul & Tacoma Lumber Co., D.C.Wash.; 73 .F.Supp. 288; Fajack v. Cleveland, etc., Co., D.C.Ohio, 73 F.Supp. 308; Lasater v. Hercules Powder Co., D.C.Tenn., 73 F.Supp. 264; Ackerman v. J. I. Case Company, D.C.Wis., 74 F.Supp. 639.

The only possible exception to the right of Congress to divest the Court of jurisdiction by the type of legislation we are here concerned with is where the right conferred by Congress blossomed into contract before passage of the Portal Act. Norris v. Crocker, 54 U.S. 429, 13 How.

429, 14 L.Ed. 210. But such is not the case here.

Plaintiffs' claims are as yet unliquidated. No judgment has been entered in any of the instant cases. Yet plaintiffs assert the " * * * Portal Act of 1947 is a retroactive law insofar as it purports to preclude enforcement of rights of action which accrued prior to its passage" in violation of the Fifth Amendment to the Federal Constitution. Learned counsel for plaintiffs admit that "it is the law that a contract may not be validly made that will prevent or postpone the exercise by Congress of the powers granted to it by the Constitution." Louisville and Nashville Railroad Company v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671.

In my opinion the Portal Act does not infringe on rights vested in plaintiffs by the Constitution. In that respect the present cases cannot be distinguished in principle from the case of Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, at page 209, in which Chief Justice Groner quotes the Supreme Court of the United States, saying, "When the root is cut the branches fall."

The instant cases are based on jurisdiction conferred on this Court by Congress. The rule is well established that jurisdiction conferred by statute may be withdrawn by an Act of Congress. Id.

Another case testing the power of Congress to abrogate a claimed vested right is Norman v. Baltimore & O. R. Co., 294 U.S. 240, at page 307, 55 S.Ct. 407, 416, 79 L.Ed. 885, 95 A.L.R. 1352, in which the Court, pointing out that parties cannot by contract remove their transaction beyond constitutional power, said:

"Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but, when contracts deal with a subject-matter which lies within the control of the Congress, they have a congenital infirmity."

The more serious question in the present cases arises out of the conclusion pleaded by plaintiffs which in effect quotes the ex-

ception to the application of the Portal Act, i. e., claims based on written or unwritten contracts, or existing by custom or practice. Several affidavits opposing defendant's motions were filed in each case, which are so lacking in what is required as to be of little or no help.

It seems to me that no good can be accomplished by assuming facts to exist that are not disclosed by the complaint or affidavits now on file. The amendment to the complaint does not attach any existing written contract, nor does it give any adequate factual description of nonwritten contracts or custom or practice. Story v. Todd Houston Shipbuilding Corporation, D.C., 72 F.Supp. 690.

An orderly administration of justice, considering all the facts and circumstances, seems to oppose the necessity of requiring a trial of the large number of claims here involved, and the expense incident thereto. The time consumed by all concerned would be considerable. The record would be large. Plaintiffs' insistence on jury trials seems inadvisable.

The gist of plaintiffs' argument in opposing the motions for summary judgment may be summarized by quoting from their brief as follows:

"The plaintiffs have asserted and still do that it is an utter impossibility to decide the issues raised by the defendants' motions by affidavits when there is no chance to examine and cross examine the witnesses, particularly when the opposing affidavits contradict each other in all respects and when it is remembered that succeeding affidavits by the same defendants dispute each other."

It may well be that one or more of the claims here in suit if tried would possibly amount to what counsel for plaintiffs describe as "something just slightly more than de minimis * * * and consequently a motion for summary judgment should not be granted." Consideration of the several oral arguments and thorough briefs on this question leads the Court to conclude that the trial of any of the cases at bar would merely lead to something less than de minimis.

The record now before the Court is such that the question of jurisdiction can be determined on the motion for summary judgment. If the Court is wrong, the inexpensive record now available to the aggrieved parties for the purpose of appeal seems preferable to the voluminous record anticipated by the testimony of so large a number of claimants at the contemplated trial, and all perhaps to no avail if the trial is productive of no more than now reflected by the file.

For the above reasons defendant's motion for summary judgment in each case is granted, and it is so ordered.

Plaintiffs may have an exception.