EVERETT L. KEMP et al., Appellees, v. DAY & ZIMMERMAN, INC., Appellant.

No. 47198.

(Reported in 33 N. W. 2d 569)

June 15, 1948.

Kuhlemeier, Poor, Fischer & Cray, of Burlington, for appellant.

Clark, Pryor, Hale & Plock and Hirsch, Riepe & Wright and J. L. Thomas, all of Burlington, for appellees.

BLISS, J.—The defendant during the progress of World War II, under direct orders and supervision of the United States War Department was engaged in the manufacture of shells, etc. at the ordnance plant near Burlington, Iowa, pursuant to a cost-plus-fee contract with the Federal Government. The appellees were foremen, assistant foremen and assistant supervisors in the employ of the defendant. On September 13, 1945, the petition of Everett L. Kemp and twenty-six others was filed against defendant for themselves and others similarly situated, alleging that, during the employment they and the defendant were engaged in, and producing goods for, commerce within the meaning of the Fair Labor Standards Act (June 25, 1938, chapter 676, 52 Stat. at L. 1060, 29 U. S. C. A., sections 201–219), sometimes referred to as FLSA, and were entitled to the benefits of said Act. The petition, in separate paragraphs, set up the particular claim of each plaintiff, giving the beginning and termination of his employment, his weekly wage, and the amount owing him for overtime employment. The petition alleged that, by reason of the nature of their work, none of the plaintiffs under the

orders of the Federal Wage and Hour Administrator was exempted from the benefits of the Act. Each plaintiff prayed for judgment in such amount for unpaid overtime as the court found, and unliquidated damages in an equal amount, and for reasonable attorney fees. Thereafter other employees similarly employed filed petitions of intervention with allegations and prayers in substance as in the petition, so that on May 6, 1947, the plaintiffs and intervenors numbered approximately one hundred twenty-one.

Defendant's answers admitted the employment, alleged payment for all work performed, and denied other allegations. It alleged an affirmative defense that at all times plaintiffs were either paid overtime compensation at time and one half for all hours in excess of forty during the workweek, or they were employed in executive or administrative capacities, and as such were exempt from the provisions of FLSA. As an additional affirmative defense, the answer alleged that when plaintiffs were not paid such overtime compensation, they were employed as salaried employees for fluctuating and variable workweek, and their weekly salaries were in full compensation for all hours worked in the workweek regardless of the number thereof. In a counterclaim defendant asked credit for certain bonuses paid plaintiffs on any judgments rendered for them. These credits were allowed.

Replies were filed to the answers denying payment in full for overtime and that any of the plaintiffs were employed in exempted capacities.

In April 1947 the court assigned the cases for trial on May 6, 1947. On the latter date defendant moved to continue the trial of all actions on the ground that Congress on May 1, 1947, had passed the "Portal-to-Portal Act" and that it was on the President's desk awaiting his approval or veto, and that it naturally affected the procedure and the powers and jurisdiction of courts in action under FLSA, and that justice would be better served if a continuance were granted pending the President's action. The motion was that day denied. On defendant's motion and by agreement of parties the actions were all consolidated for trial, and trial was begun at 1:50 p.m. on May 6, 1947.

A stipulation, defendant's Exhibit A, but introduced by all

parties, was received in evidence. With other matters it provided:

"2. That if any Act or Acts of Congress becoming effective subsequent to May 1st, 1947, change the substantive or remedial law with reference to the Federal Fair Labor Standards Act, under the terms of which plaintiffs are demanding judgment, or change the law relative to the trial, or the powers or jurisdiction of the court in such matters, each party to any of said suits * * * may amend its, his or their respective pleadings, in order that the amending party may avail itself or himself of the provisions of the law or laws so changed, and may plead and move thereunder, or in respect thereto, and move or plead to any amendment or pleading so filed, and each party may offer evidence relative to the issues. Each party shall be allowed a reasonable time so to amend, move and plead.

"It is further stipulated:

"(1) That the jury will be waived, and the issues of fact and law submitted to the court for determination. .

"(2) That the plaintiff was employed by the defendant for a stated weekly salary intended by the defendant to be exempt from overtime compensation, and was so classified upon the records of defendant and so paid without regard to the number of hours worked, in the various job classifications in which he worked during his employment and that he orally, or in writing, agreed to work as many hours as were required to discharge the responsibilities of his position or positions. * * *

"(7) That during his entire employment the plaintiff (a) Had as his primary duty the management of a recognized department or subdivision of defendant's business, and (b) Customarily and regularly directed the work of other employees therein, and (c) That his suggestions and recommendations as to hiring or firing, and as to advancement and promotion, or other change of status of employees under him, were not given particular weight by the defendant prior to October 17th, 1943, but were thereafter. (d) He customarily and regularly exercised discretionary powers, and (e) He was compensated for his services on a salary basis, by payments in excess of $30 per week.

"(8) That prior to October 17th, 1943, the hours of work of the plaintiff, of the same nature as that performed by non-exempt employees, exceeded twenty per cent (20%) of the number of hours worked in the workweek by the nonexempt employees under his direction. * * *

"(14) Attorney fees * * * will be fixed by the court with right in defendant to present objections thereto."

Defendant then placed in the record its employee record of each plaintiff and intervenor, giving beginning and termination of employment, rate of pay, nature of work, advancements, and weekly amounts paid, and the amount due at the hourly rate of pay for forty hours in the week and time and one half for hours in excess of forty per week on the basis of a variable workweek. All parties accepted this record as the correct amount claimed by each plaintiff and intervenor. This same procedure was followed as to each claimant. Evidence was introduced as to four claims on the afternoon of May 6, 1947, eleven claims on May 7, twelve claims on May 8, thirteen claims on May 9, seven claims on May 10, eight claims on May 12, and fifteen claims on May 13. On the day following the establishment of any claim the court entered judgment as to each such claimant on the next day of court following the proof, that is on May 7, 8, 9, 10, 11, 12, 13 and 14, 1947.

On each claim the court made findings of fact and conclusions of law that no claimant had been employed in an administrative or executive capacity which exempted him from the benefits of the FLSA.

The following is but a sampling from the detailed schedule of the seventy judgments entered for the appellees, set out as illustrative only:

| Plaintiff | Overtime Compensation | Offset | Liq. Dam. | Att'y Fees | Costs | Total |
|---|---|---|---|---|---|---|
| G. C. Davis | $263.44 | | $263.44 | $200 | $ 9.46 | $ 736.34 |
| W. Jarman | 700.72 | $ 72.00 | 628.72 | 300 | 10.97 | 1,568.41 |
| H. E. Henderson | 246.44 | 50.00 | 196.44 | 175 | 139.35 | 707.23 |
| G. D. Swinford | 422.69 | 240.00 | 182.69 | 100 | 8.86 | 474.24 |
| M. E. Parrott | 446.90 | 140.00 | 306.90 | 200 | 10.97 | 824.77 |
| R. D. Armstrong | 79.95 | . | 79.95 | 100 | 10.97 | 270.87 |
| G. H. Dailey | 161.54 | | 161.54 | 100 | 8.86 | 431.94 |
| R. F. Nelson | 750.98 | 72.00 | 678.98 | 300 | 9.46 | 1,667.42 |

On May 14, 1947, after the entry of the fifteen judgments which had been established by the evidence of the day before, the attorneys came into court and announced that the President had that day signed the "Portal-to-Portal Act of 1947" (chapter 52, Public Law 49, Eightieth Congress, 1st Session, 29 U. S. C. A., sections 251–262) which had been referred to and discussed in defendant's motion for continuance of May 6, 1947. The trial of the remainder of the consolidated cases was then discontinued.

On May 21, 1947, defendant filed motions for new trial and vacation of judgments in all of the actions in which judgments had been entered, and as grounds therefor materially affecting its substantial rights, alleged:

"(1) Accident or surprise which ordinary prudence could not have guarded against. (2) Error in fixing the amount of recovery. (3) That the judgment is not sustained by sufficient evidence, and is contrary to law. (4) Material evidence, newly discovered which could not with reasonable diligence have been discovered and produced at the trial. (5) Errors of law occurring in the proceedings, and mistakes of fact by the court."

As additional grounds defendant referred to the stipulation, Exhibit A, particularly paragraph 2 thereof: the fact that the Portal-to-Portal Act was not effective until May 14, 1947; that no judgment entered had become final because the time for appeal had not expired; that the attorney fees fixed by the court were excessive; that the court erred in entering judgment after the passage of the Act; that the services involved in the overtime of each plaintiff were not compensable under the Act by an express provision of a contract, or by custom or practice, in effect at the times of such activities; that defendant, due to the taking effect of the Act, has newly discovered evidence that in reliance upon government regulations it acted in good faith and upon reasonable grounds and that whatever it did was not a violation of the Fair Labor Standards Act; that the court erred in overruling defendant's objection to certain evidence, and in sustaining plaintiffs' motion to strike an amendment to defendant's pleading, and in overruling the motion for continuance.

On May 22, 1947, plaintiffs filed a resistance to defendant's

motion alleging as grounds therefor that: (1) The legislation referred to in said motion as the "Portal-to-Portal Act of 1947" is not applicable to the cases in which judgments have been entered or to any of the actions consolidated herein; that all of the plaintiffs in the consolidated actions sought and are seeking therein to recover for overtime work during the ordinary working day while in the employment of the defendant, ·such work being compensable by custom and practice in effect at the time of such employment and service. (2) Plaintiffs deny the existence of any element of surprise which ordinary prudence could not have guarded against, in that before the commencement of the trial in which the judgments herein attacked by said motion were rendered, the legislation relied upon in said motion had been acted upon by the Senate and House of Representatives although it did not become a law until May 14, 1947, by the signature of the President of the United States.

It may · be further stated that the full text of the Act was known to the defendant and its counsel and that any evidence which would now be material was known to them before the commencement of the trial herein.

"That as to all judgments entered in the consolidated case No. 8583 on or prior to May 11, 1947, the motion of the defendant for a new trial was filed too late under the rules of civil procedure."

On May 23, 1947, the court in ruling on the motion and resistance said:

"Rule 247 of the Iowa Rules of Civil Procedure provides that such motion must be filed within ten days after the judgment. Under such rule the motion can only apply to the judgments entered on or after May 11th."

As to the remaining judgments, the defendant, under Rule 244, lists in substance the causes covered by paragraphs (c), (e), (f), (g) and (h). The court discussed the other grounds of the motion, and finding them without merit overruled the motion.

Speaking of the allegations in defendant's motion as to

surprise, discovery of material evidence and the applicability of the Portal-to-Portal Act, the court said that in view of the court proceedings these allegations were without basis, and that the question presented is whether the adoption of a new or different law will permit the defendant to relitigate matters which were tried, submitted, and decided under the provisions of a law which at the time was in force. To so decide would prevent the final adjudication of any matter. "I do not believe the stipulation, in so far as the claims under the motion are concerned, changes the situation."

Defendant assigns four errors in seeking a reversal. It asserts the court erred: 1. In overruling defendant's motion for continuance filed May 6, 1947. 2. In overruling its motion to vacate the judgments and to grant a new trial. 3. In overruling certain objections to evidence and motions to strike evidence during the testimony of John Hale. 4. In allowing excessive fees to the attorneys for plaintiffs and intervenors. These assignments involve troublesome questions, of importance to the parties and to the public. Before discussing them separately, a preliminary statement as to the statutes and some judicial interpretation of them may be helpful.

I. The Fair Labor Standards Act of 1938 became effective June 25, 1938. Its preamble or Congressional finding and declaration of policy is stated in section 202(a), thus:

"The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3), constitutes an unfair method of competition in commerce; (4) leads to labor disputes * * * obstructing commerce * * *; and (5) interferes with the orderly and fair marketing of goods in commerce."

To correct and eliminate these conditions, section 206 of the Act requires minimum rates of pay in those industries,

and section 207(a)(3) requires a workweek of forty hours unless the employee receives compensation for employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed, and section 216(b) provides that any employer violating the said provisions of sections 206 and 207 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Section 216(b) also provides that action to recover such liability may be maintained in any court of competent jurisdiction by the affected employees, for themselves and other employees similarly situated, and in addition to any judgment awarded them the court shall allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action.

The words of these sections are clear and definite. While the Act does not define the terms "workweek" or "work", there never had been any reasonable doubt in industry, or generally, concerning the nature of compensable or productive work. Nor was there for several years after the passage of the FLSA of 1938. In Tennessee Coal, Iron & R. R. Co. v. Muscoda Local No. 123, 1944, 321 U. S. 590, 64 S. Ct. 698, 88 L. Ed. 949, 152 A. L. R. 1014, the supreme court held that iron ore miners were engaged in compensable work under FLSA while traveling under ground from the mine portal to the working face and in returning to the portal after quitting work. In Jewell Ridge Coal Corp. v. Local No. 6167, 1945, 325 U. S. 161, 65 S. Ct. 1063, 89 L. Ed. 1534, a like holding was made as to bituminous coal miners. In that case the court felt it was not bound by a fifty-year-old mining custom and practice and collective-bargain contracts between the Union and the employer of long standing, recognizing that traveltime was not work time. The majority opinions in these cases stressed the dangers and discomforts of travel in the dark and poorly ventilated underground passages. In each case there was a dissenting opinion in which other JUSTICES joined. Next came the opinion in Anderson v. Mt. Clemens Pottery Co.; 328 U. S. 680, 683, 66 S. Ct. 1187, 1190, 90 L. Ed 1515. Mr. Justice Murphy, who wrote the majority

opinions in the two cases just noted, was the author of the majority opinion in this case. Mr. Justice Frankfurter concurred in the dissent of Mr. Justice Burton. Mr. Justice Jackson took no part. In that case the employees after punching the clock changed their clothes and walked "to their working places along clean, painted floors of the brightly illuminated and well ventilated building." At quitting time they retraced their steps and changed to their street clothes. The court held these activities preliminary and postliminary to their productive work were compensable at the overtime rate of pay, for the past periods of employment since the FLSA had been in effect, except as barred by any applicable statute of limitation. The case was decided June 10, 1946, and rehearing was denied October 14, 1946.

This decision loosed a deluge of litigation by employees against their employers to recover the unpaid and unexpected overtime compensation, liquidated damages in equal amount, attorney fees and costs, under section 216(b) of the FLSA, for the "portal-to-portal" activities. In Holland v. General Motors Corp., September 4, 1947, D. C. N. Y., and Casheba v. same defendant, December 15, 1947, 75 F. Supp. 274, 276, Judge Knight said:

"As of January 31, 1947, the Administrative Office of the United States Courts reported 1,515 cases had been filed in which the aggregate claims totaled $5,785,204,606. A great number of suits were brought after that date. In many instances no specific amount of damages was stated in the complaints. In this Western District of New York, 110 suits have been brought on behalf of 72,674 plaintiffs, seeking damages in the amount of $91,947,000 * * *. There are 4,280 plaintiffs * * * in this suit."

A great protest arose against this threat to the nation's economy. Even before the decision in the Mt. Clemens case the economic danger resulting from the judicial interpretation of the FLSA came to the attention of the Seventy-ninth Congress. The House Judiciary Committee reported favorably on the bill of Congressman Gwynne of Iowa (H. R. 2788, Seventy-ninth Congress, 1st Session (1945)). The Senate Judiciary

Committee reported favorably on the bill with slight changes, but it was not reached for passage before adjournment. But it was about the first business in the eightieth session, and after committee hearings in both chambers a bill, whose short title is the "Portal-to-Portal Act of 1947" was passed by large majorities on May 1, 1947.

The affidavit of one of defendant's attorneys, made a part of the motion for continuance, stated:

"I and my associates first obtained knowledge of the action of Congress in reference to the change in law referred to in the motion, May 2, 1947, and on said day telephoned to Washington as to the matters in question, and did not receive a copy of the proceedings until late Saturday afternoon May 3, 1947, and that defendant has been diligent in presenting said motion."

In due course the bill was presented to the President of the United States. The defendant did not know whether the bill would be signed or vetoed. Not knowing this the defendant could not challenge the petitions nor the proceeding. It filed its motion for continuance on Tuesday, May 6, 1947, at 4 p.m. The court denied the motion that afternoon. On May 14, 1947, the President made the Portal-to-Portal Act of 1947 (H. R. 2157) (chapter 52, Public Law 49, Eightieth Congress, 1st Session, 29 U. S. C. A., sections 251–262) a law by his signature. In his message to Congress approving it he stated that "the purpose of the main provisions of the Act is to eliminate the immense potential liabilities which have arisen as the result of the 'portal-to-portal' claims." U. S. Code Congressional Service (1947) page 1827.

The findings and policy of the Act "to meet the existing emergency" are stated in chapter 52 (Part I), section 1(a):

"The Congress hereby finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the result that, if said Act as so interpreted or claims arising under such interpretations were

permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others * * *; (2) the credit of many employers would be seriously impaired; (3) * * *; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers * * * would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services * * * would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur."

In view of the serious emergency existing and the impending threat to public interest and the general welfare, and the express policy and purpose of the executive and legislative departments of the Federal Government to eliminate the evils, the judicial department, in all its branches, should be most alert and insistent in its co-operation, and should not unduly accelerate its procedure to aid those seeking recoveries which had not been "contemplated by either the employer or employee at the time they were engaged in."

Section 2 of Part II of the Act provides:

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938 * * * in any action or proceeding commenced prior to or on or after

the date of the enactment of this Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, except an activity which was compensable by either—

"(1) *an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer;* or

"(2) *a custom or practice in effect, at the time of such activity,* at the establishment or other place where such employee was employed, *covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.* [Italics supplied.]

"(b) For the purposes of subsection (a), an activity shall be considered as compensable under such contract provision or such custom or practice only when it was engaged in during the portion of the day with respect to which it was so made compensable.

"(c) In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act * * * in determining the time for which an employer employed an employee there shall be counted all that time, *but only that time, during which the employee engaged in activities which were compensable within the meaning of subsections (a) and (b) of this section.* [Italics supplied.]

"(d) No court of the United States, of any State * * * shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after the date of the enactment of this Act, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act * * * to the extent that such action or proceeding seeks to enforce any liability or impose any punishment *with respect to an activity which was not compensable under subsections (a) and (b) of this section.*" (Italics supplied.)

Section 9 of Part IV provides:

"In any action or proceeding commenced prior to or on or after the date of the enactment of this Act * * * no employer shall be subject to any liability * * * for * * * failure * * * to pay minimum wages or overtime compensation under the Fair Labor Standards Act * * * if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding."

Section 11 of Part IV provides:

"In any action commenced prior to or on or after * * * the enactment of this Act to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under * * * the Act of 1938 * * * if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16(b) of such Act." (Section 216(b) of 29 U. S. C. A.)

 There is no ambiguity in the above-quoted provisions of the Act of 1947. The controlling provisions are clearly stated and restated. To recover under the Fair Labor Standards Act as amended and modified by the Portal-to-Portal Act of 1947 for unpaid overtime compensation, it is essential to establish that it was compensable by an express provision of a written or a nonwritten contract effective during the overtime in question, or that it was compensable by a custom or practice effective at said time, and not inconsistent with a written or a nonwritten contract. There is neither pleading nor proof that any overtime service for which any plaintiff sought recovery was compensable by contract, written or nonwritten, or by custom or

practice. No assertion has been made in the argument in this court that the claim of any plaintiff is based upon an express provision in any contract with defendant, or that the defendant is liable to him under any custom or practice existing during the period of his work. The only basis of the claims which we find in the printed or certified record is a statement in paragraph 1 of the resistance to defendant's motion to vacate the judgments and for new trial, viz.:

"* * * that all of the plaintiffs in the consolidated actions sought and are seeking therein to recover for overtime work during the ordinary working day while in the employment of the defendant, *such work being compensable as overtime by custom and practice in effect at the time of such employment and service.*" (Italics supplied.)

There is no evidence even tending to support or sustain the italicized statement. The plaintiffs, of course, were employed by defendant. Whether it was by written or verbal contracts does not appear. But the fact that there may have been contracts of employment is not sufficient to sustain recovery in this action. To aid the plaintiffs such contracts, if any, must each have contained an express provision that the defendant agreed to pay the employee compensation for the overtime alleged to be due him. No contract containing any such express provision is claimed, alleged or proved by any plaintiff. The court made no such finding. No such fact is stipulated in Exhibit A. Paragraph 2 of the stipulation is the only part of it which refers to that particular matter. As stated therein each plaintiff was employed at a stated weekly salary without regard to the number of hours he worked each week; that he was exempt from overtime compensation, and defendant intended him to be exempt and so classified him upon its records, and that each plaintiff agreed in writing or orally to work as many hours as were required to discharge the responsibilities of his position.

It appears from the record that the plaintiffs began work at the ordnance plant at different times in the period beginning in the late months of 1941 and thereafter; that during this period each and all of them were paid only the stated weekly salaries,

which sums were received by them without objection or protest that they were not full compensation for all work performed by them, or for overtime, and that no claim for overtime compensation was ever made by any of them until the actions were begun.

While delay in making demand or bringing suit does not bar the action, unless it is an estoppel, it is a matter to be considered as bearing upon the fact of contract or custom, or the expectation of compensation for overtime service. Drake v. Hercules Powder Co., January 8, 1946, Del. Super., 55 A. 2d 630, 635; Connell v. Delaware Aircraft Industries, Inc., July 15, 1947, Del. Super., 55 A. 2d 637, 643; Jones v. Bethlehem-Fairfield Shipyard, December 22, 1947, D. C. Md., 75 F. Supp. 86, 91, 92; Bumpus v. Remington Arms Co. Inc., December 10, 1947, D. C. Mo., 74 F. Supp. 788, 791.

Section 213(a) of the FLSA of 1938 (29 U. S. C. A.) states:

"The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator) * * *."

Section 204(a) of said Act provides that "There is created in the Department of Labor a Wage and Hour Division which shall be under the direction of an Administrator, to be known as the Administrator of the Wage and Hour Division (in sections 201-219 of this title)."

In sections 541.1, 541.2 of the Regulations of the Administrator (29 U. S. C. A. App. 478, 479) set out in the footnotes to Jones v. Bethlehem-Fairfield Shipyard, supra, 75 F. Supp. 86, 87, 88, are noted what characterizes, defines, and delimits an executive and administrative employee. Paragraphs A, B, C, D, E and F of said section 541.1 are embodied in paragraphs 7 and 8 of the stipulation, Exhibit A, hereinbefore set out. It was the contention of the defendant by pleading and otherwise during the trial, that all of the plaintiffs served in executive capacities, and that it in good faith so considered, classified, paid them, and thought they were exempt employees and not

entitled to overtime compensation or liquidated damages. The trial court, as noted above in its findings, found that their recommendations were given little weight by their superiors, and that in excess of twenty per cent of the work of each was of the same kind as that performed by the employees under them. Because of these findings the court held that plaintiffs were not executives and were entitled to overtime pay and liquidated damages.

In view of the disposition which we make of this appeal we will comment no further on the evidence.

II. We set out below the authorities in support of our conclusion that the petitions of plaintiffs did not state a cause of action or show jurisdiction in the trial court after the Portal-to-Portal Act became effective, and at the time defendant's motion to vacate the judgments and for new trial was filed and ruled upon, notwithstanding plaintiffs' claims were evidenced by judgments, and that the court abused its discretion and committed prejudicial error in overruling the motion as to the thirty plaintiffs now in the appeal.

It is true that at the time the various petitions were filed and at the time of the trial, the Fair Labor Standards Act of 1938, under which the actions were brought, was not then amended and modified by the Portal-to-Portal Act of 1947, and it did not require that the pleading or the proof of such claims as were alleged by plaintiffs must be compensable by the express provision of a contract, or in accord with a custom or practice, effective when the claims arose. But since the effective date of the latter Act, all petitions and complaints in pending actions of the kind at bar, whether filed before or after said date, not alleging that the overtime compensation and the liquidated damages were compensable under an express provision of a written or nonwritten contract, or under a custom or practice in existence during the overtime period, are vulnerable to a motion by the employer-defendant to dismiss the action.

We think defendant was entitled to the benefit of the Portal-to-Portal Act, and was entitled to the vacating of the judgments, and an opportunity to a new trial and to move and plead under said Act. The grounds generally alleged in such motion are that

the petition or complaint does not state a cause of action and that the court has no jurisdiction. Time is ordinarily given to amend. See the following cases in which the attack was sustained: Seese v. Bethlehem Steel Co., October 14, 1947, D. C. Md., 74 F. Supp. 412, action begun February 19, 1947; Ackerman v. J. I. Case Co., November 5, 1947, D. C. Wis., 74 F. Supp. 639, action begun prior to Portal-to-Portal Act, motion filed June 23, 1947; Role v. J. Neils Lbr. Co., December 19, 1947, D. C. Mont., 74 F. Supp. 812, action commenced April 10, 1947; Borucki v. Continental Baking Co., November 7, 1947, D. C. N. Y., 74 F. Supp. 815, action begun September 8, 1947; Johnson v. Park City Consolidated Mines Co., October 3, 1947, D. C. Mo., 73 F. Supp. 852, action begun December 31, 1946; Moeller v. Eastern Gas & Fuel Associates, December 22, 1947, D. C. Mass., 74 F. Supp. 937, 938, action filed in December 1946. The complaint did not allege the activity was compensable by either contract or custom. In the Moeller case the court said:

"This court has no jurisdiction to proceed in the face of the clear prohibition of the statute. The motion to dismiss will be allowed unless plaintiffs, within fifteen days, seek leave to amend the complaint on a showing that they can conform their allegations to the jurisdictional averments essential to the maintenance of an action under the statute."

Breusing v. Fisher Body Division, Kansas City Plant, General Motors Corp., October 29, 1947, D. C. Mo., 74 F. Supp. 541, 542. The court said:

"There is no pretext that the overtime suit was under an express provision of a contract or in accordance with a custom or practice in effect at the time of such activity. Since this is a requirement under the amended law for recovery, the Congress has taken away from the federal court jurisdiction where such averments are not made in the complaint."

Bateman v. Ford Motor Co. and Fisch v. General Motors Corp., February 27, 1948, D. C. Mich., 76 F. Supp. 178, 184, 14 Labor Cases, 64,353. In this case plaintiffs amended, but unsuccessfully. The court (PICARD, J.) said:

"For the many reasons given we hold Section 2 (a) and (d) of the Portal-to-Portal Act, questioned by these contested cases, to be constitutional and will dismiss the suits involved as orders are presented." O'BRIEN, LEDERLE, KOSCINSKI and LEVIN, District Judges, concur.

Siomkin v. Fairchild Camera & Instrument Corp., January 30, 1948, D. C. N. Y., 75 F. Supp. 329, motion to dismiss granted; Sinclair v. United States Gypsum Co., January 27, 1948, D. C. N. Y., 75 F. Supp. 439, 441, action filed January 20, 1947. Court said:

"* * * dismissal must be granted on grounds raised by the motion that the complaint fails to state a claim compensable under section 2, subdivisions (a) and (b) of the Portal-to-Portal Act of 1947, 29 U. S. C. A. §252 (a, b), and that this court lacks jurisdiction under section 2(d) of said Portal Act. * * * No claim is made that any agreement between the parties was made for payment for the overtime employed in any of the asserted activities. The basis for any such claim must be found if anywhere in an implication from the statute."

Holland v. General Motors Corp. and Casheba v. same defendant, September 4 and December 15, 1947, D. C. N. Y., 75 F. Supp. 274; Bumpus v. Remington Arms Co., Inc., December 10, 1947, D. C. Mo., 74 F. Supp. 788; Hollingsworth v. Federal Mining & Smelting Co., December 12, 1947, D. C. Idaho, 74 F. Supp. 1009; Burfeind v. Eagle-Picher Co., May 21, 1947, D. C. Tex., 71 F. Supp. 929, action begun February 13, 1947, amended complaint filed May 1, 1947, motion to dismiss filed May 19, 1947, was sustained because no contract or custom was alleged; Boehle v. Electric Metallurgical Co., June 9, 1947, D. C. Ore., 72 F. Supp. 21, complaint dismissed for lack of jurisdiction; Story v. Todd Houston Shipbuilding Corp., July 17, 1947, D. C. Tex., 72 F. Supp. 690, action filed January 8, 1947, motion to dismiss granted; Lasater v. Hercules Powder Co., July 25, 1947, D. C. Tenn., 73 F. Supp. 264, 272, trial and judgment for defendant. The court said:

"As this suit is based upon the Fair Labor Standards Act and not upon contract, and the proof without contradiction

discloses no express contract between the plaintiffs and the defendant for payment of the time claimed, there can be no contention that there was a contract for such payment *independent of the Fair Labor Standards Act.* * * * the question to be determined is not whether the Fair Labor Standards Act became a part of the contract between each employer and each employee who were under the terms of the Act, but rather what Congress intended in the Portal-to-Portal Act of 1947 by the word 'contract' in said exception at Section 2(a) (1). Reading contextually I think it is quite obvious that the Congress intended to make the exception applicable only to express written or nonwritten contracts made between the employer and employees *without regard to any legislation.* Certainly the Congress did not intend to pass a nugatory law." (Italics supplied.)

Cochran v. St. Paul & Tacoma Lbr. Co. (and three other cases), May 26, 1947, D. C. Wash., 73 F. Supp. 288, 289, 292, actions all commenced before Portal-to-Portal Act was enacted. Motions granted and actions dismissed. The court said:

"To deny the motions would, if not directly at least by implication, require findings that the Act— this Portal-to-Portal Act—is unconstitutional. I say that because its language is so plain, direct, simple and unequivocal that it leaves no room for construction or doubt as to what was intended or what was meant. We are placed in a position where we need not endeavor to determine what the Congress meant when it spoke, because, as I say, it leaves no room whatever for construction. * * * until the Fair Labor Standards Act of 1938 was enacted by Congress, *no rights whatever existed in any employee to maintain actions such as we have here.* It is not an action ex contractu nor an action ex delicto. It is not a common law action. *The action is purely a creature of the statute. The power that gave it, according to this holding* [Collector v. Hubbard, 12 Wall. (U. S.) 1, 20 L. Ed. 272], *has the power to take it away, and that is exactly what Congress did so far as the Portal-to-Portal Act is concerned."* (Italics supplied.)

Sadler v. W. S. Dickey Clay Mfg. Co., October 1, 1947, D. C. Mo., 73 F. Supp. 690, 692, action begun January 7, 1947. The

complaint alleged neither contract nor custom. Defendant's motion to dismiss was granted with leave to plaintiffs of sixty days to amend. The court said:

"The 'Portal-to-Portal Act of 1947' specially withdrew from the jurisdiction of the Courts power to enforce claims such as are here -asserted by plaintiffs, *unless it is established by pleading and proof that such claims arise out of the express provisions of Section 2(a) (1) (2) of said Act.* * * * Plaintiffs should now amend their complaint and allege facts, establishing that the activities they now claim entitle them to overtime compensation, arose from a source as delineated in Section 2(a) of the 'Portal-to-Portal Act of 1947.' Otherwise, this Court has lost jurisdiction of this cause, and has lost any power it might have had to compel defendant to plead to the complaint herein." (Italics supplied.)

On a retrial of the Sadler case, supra, on February 26, 1948, 14 Labor Cases 64,390, on an amended complaint, which, in substance, simply averred generally in the language of section 2(a) of the Act, the court again sustained defendant's motion to dismiss. The court said at page 618 of 78 F. Supp.:

"The action taken by Congress in the Portal-to-Portal Act, supra, was intended to outlaw all existing claims made under the Fair Labor Standards Act *which were not based on contract, custom or practice.* * * * It seems manifest from the method adopted by Congress in so delimiting the jurisdiction of courts to hear and determine claims arising under the Fair Labor Standards Act, as amended, that Congress intended that before an employee could invoke the jurisdiction of the courts in the enforcement of such claims, *the employee should affirmatively and distinctly establish by facts his right to maintain such action and the jurisdiction of the court thereover.*" (Italics supplied.)

Hart v. Aluminum Co. of America, October 8, 1947, D. C. Pa., 73 F. Supp. 727, action begun prior to Portal-to-Portal Act by 20,000 plaintiffs in one suit and 8,000 in another against defendants in forty-three actions. Motions to dismiss in each case granted because no contract or custom was pleaded.

Bartels v. Sperti (and ten other cases), September 2, 1947, D. C. N. Y., 73 F. Supp. 751, 753. The complaints contained no allegations that the claims were compensable under any contract or custom. Motions to dismiss in each action were granted. The court said:

"Nor does the lack of jurisdiction seem any the less manifest because jurisdiction existed at the time of the commencement of the various actions. * * * The language of Section 2(d) seems clear and unambiguous. By its terms it excludes jurisdiction of any action or proceeding 'whether instituted prior to or on or after the date of the enactment of the Act.' * * * and there is no indication on the face of the complaints that the actions are to enforce liability for claims based upon activities which were compensable in any amount under contract, custom or practice."

Adkins v. DuPont de Nemours & Co., September 26, 1947, D. C. Okla., 13 Labor Cases 64,025, motion to dismiss was sustained. The court said:

"It is my conclusion that the court does not have jurisdiction in this case under section two of the Portal-to-Portal Act of 1947, since it is an action brought under the Fair Labor Standards Act."

Parkhill v. Todd Shipyards Corp., January 21, 1948, 190 Misc. 782, 76 N. Y. S. 2d 363, 119 N. Y. L. J. 257; Alameda v. Paraffine Companies, November 24, 1947, D. C. Cal., 75 F. Supp. 282; Ditto v. American Aluminum Co., June 14, 1947, D. C. Cal., 73 F. Supp. 955; Lassiter v. Guy F. Atkinson Co., May 28, 1947, 9 Cir., Wash., 162 F. 2d 774, 777, wherein the court said:

"It is plain that *in the absence of the Act* [FLSA] the contractor was not liable for any additional payments. The added compensation recoverable does not rest on agreement or consent in the traditional sense, but results from a contract *existing only in contemplation of law*. The liability is quasi-contractual only." (Italics supplied.)

Kirkham v. Pacific Gas & Elec. Co., December 19, 1947, D. C. Cal., 78 F. Supp. 658, 14 Labor Cases 64,199; Sochulak v. Ameri-

can Brake Shoe Co., January 6, 1948, D. C. N. Y., 79 F. Supp. 437, 14 Labor Cases 64,220; Hays v. Hercules Powder Co., December 26, 1947, D. C. Mo., 7 F. R. D. 747, 14 Labor Cases 64,240; Smith v. Cudahy Packing Co., December 12, 1947, D. C. Minn., 76 F. Supp. 575, 14 Labor Cases 64,280; Smith v. American Can Co., January 12, 1948, D. C. Ill., 8 F. R. D. 112, 14 Labor Cases 64,281; Plummer v. Minneapolis-Moline Power Implement Co., February 3, 1948, D. C. Minn., 76 F. Supp. 745, 14 Labor Cases 64,284, judgment ordered for defendant on its conclusive showing that the claim was not compensable under contract, custom, or practice; Donovan v. Republic Steel Corp., January 22, 1948, D. C. N. Y., 14 Labor Cases 64,295; Wan v. Black, February 5, 1948, D. C. Hawaii, 14 Labor Cases 64,294; Battery Workers Union v. Electric Storage Battery Co., January 30, 1948, D. C. Pa., 78 F. Supp. 947, 14 Labor Cases 64,298, defendant's motion for judgment was granted. The court held that recovery must be based on a contract which expressly provides that the activities in question are compensable, *and it is not sufficient that the contract provides generally for overtime pay;* Blessing v. Hawaiian Dredging Co., February 6, 1948, D. C. Dist. of Columbia, 76 F. Supp. 556, 14 Labor Cases 64,327, motion of defendant for summary judgment.

In Colvard v. Southern Wood Preserving Co., November 1, 1947, D. C. Tenn., 74 F. Supp. 804, 805, plaintiffs claimed the Portal-to-Portal Act did not apply because they claimed under a general contract to pay time and one half for overtime, and that section 2, therefore, did not apply. In granting defendant's motion for summary judgment, the court said:

"My judgment is that the contract for the payment of overtime, as intended by the Congress in the Portal-to-Portal Act of 1947, must be an express or written contract concerning the particular time for which overtime compensation is sought. I think the general provision in the employment contract to pay time and one half for overtime has no significance in determining the number of hours in a work week. This would be true had there been no Portal-to-Portal Act of 1947."

Lockwood v. Hercules Powder Co., February 16, 1948, D. C. Mo., 78 F. Supp. 716, 14 Labor Cases 64,366, holds that a com-

plaint in a pending employee's suit must allege, not conclusions of law, but facts sufficient to state a cause of action under the Fair Labor Standards Act *as amended by the Portal-to-Portal Act;* Lemme v. Caruso Foods Inc., January 17, 1948, D. C. N. Y., 14 Labor Cases 64,391, the complaint was held subject to dismissal unless a contract, custom, or practice on which compensation was based could be shown.

The decisions cited above show the unanimity of the courts in their construction of section 2 and its subsections in the Portal-to-Portal Act. We find no contrary holding other than in Deaton v. Titusville Bldg. Corp., June 20, 1947, D. C. N. Y., 72 F. Supp. 986 and Lemme v. LaRosa & Sons, 1947, D. C. N. Y., 7 F. R. D. 485, in which the court overruled motions to dismiss complaints showing lack of jurisdiction on their face, and left it to the defendants to set up this defense by answer. Such holding is criticized in Johnson v. Park City Consolidated Mines Co., supra, 73 F. Supp. 852, 857, as being contrary to the general rule that with respect to the jurisdiction of federal courts "the presumption, in every stage of the cause, is, that it is without their jurisdiction unless the contrary appears from the record." Bors v. Preston, 1884, 111 U. S. 252, 255, 4 S. Ct. 407, 408, 28 L. Ed. 419. It is well settled that one seeking recovery in the federal courts must affirmatively show jurisdiction.

III. The first error assigned by defendant is the overruling of its motion for a continuance until it could be determined whether the President would veto the Portal-to-Portal bill, or make it a statute by his signature. The bill had been messaged to him shortly after its passage by Congress on May 1, 1947. The President had ten days in which to take affirmative action. The defendant telephoned to Washington immediately on learning of passage of the bill and procured a copy of it on Saturday, May 3. The motion for continuance was filed on May 6. It set out in substance the changes which the bill would effect in the Fair Labor Standards Act if the President signed it. The court was thereby informed of the findings and policy of Congress and the purpose of the legislation as stated in its section 1 (a). It was informed of the affirma-

tive defenses available to the defendant in sections 9 and 11 of the bill. It knew that if the trial was continued for but a few days and the bill became an Act, the petition as filed would be vulnerable to the same attack that the numerous courts had sustained in the decisions above noted, and that the defenses provided in sections 9 and 11 of the Act could be pleaded in the answers to any amended petitions. The court denied the motion for continuance shortly after it was filed and on the same day. The ruling of the court was a grievous error and very prejudicial to the defendant. It deprived it of the rights and the remedies which Congress and the President intended the Act should give to it. It is true that the granting or denying of a continuance is ordinarily a discretion of the court. But it is a sound, judicial discretion, and not absolute or arbitrary. In re Estate of Rogers, 226 Iowa 183, 283 N. W. 906. Under the circumstances and conditions the ruling of the court was an abuse of discretion. The postponement asked for was but a few days. It was vital to the defendant. Except for the testimony of one witness, the evidence was stipulated or documentary. It was of the same general type and could be expeditiously introduced. Seventy claims were established in six and one-half days. The delay would have deprived the plaintiffs of nothing to which they were entitled. The first petition was filed September 13, 1945. Neither side could be rightfully charged with undue delay. Some continuances had been agreed to. The defendant had prepared the exhibits showing the work records, wages and compensation of each claimant, to facilitate the proof of his claim. The reason for the continuance and the necessity of it were in no way or degree due to the fault or negligence of the defendant or its attorneys. Certainly the circumstances convincingly indicate that substantial, evenhanded justice, fair play, and the rights of the defendant and public well-being would have been much better served by the granting of the continuance than by its denial. In the extensive litigation involving similar claims from courts in all parts of the country we find in the reported cases no precedent for the ruling of the trial court. In situations quite similar

courts have ruled otherwise. In Darr v. Mutual L. Ins. Co., July 11, 1947, D. C. N. Y., 72 F. Supp. 752, 753, a motion was made by defendant to reopen the case. It was granted. The court said:

"Before the entry of judgment upon my findings and conclusions dated April 30, 1947, wherein I indicated that the plaintiffs under the Fair Labor Standards Act of 1938, 29 U. S. C. A. §201 et seq., were entitled to recover the sum of $660 in the aggregate by way of premium for overtime work performed in 1940 and $660 additional by way of liquidated damages, the Portal-to-Portal Act of 1947, 29 U. S. C. A. §251 et seq., was enacted. Thereupon the defendant moved to reopen the case to permit it to plead, and prove if it can, the new defenses provided in sections 9 and 11 of said Act for cases in which the court is not deprived of jurisdiction by section 2 of the Act. * * * It is accordingly ordered that the defendant's motion to reopen be granted."

In Lasater v. Hercules Powder Co., supra, 73 F. Supp. 264, 273, the court said:

"A portion of the announcements made in this opinion were prepared some months ago but not filed. I was of the opinion that time and expense would be saved to the litigants by awaiting clarification of the situation by judicial opinion or action of the Congress. I think developments have verified the correctness of this position."

In St. Johns River Shipbuilding Co. v. Adams, December 12, 1947, 5 Cir., Fla., 164 F. 2d 1012, 1013, the court reversed a judgment for plaintiffs and remanded the case. The court said:

"*Since the trial the so-called Portal-to-Portal Act has been passed* * * *. It appears to have a bearing upon the question of limitation raised in the case * * * and also on the question whether under section 9 thereof the Company is excused because in fixing and paying the salaries of plaintiff and intervenors without reference to overtime it acted in good faith * * *. The precise things done or relied on have not been shown or ad-

judged, nor whether they fall within the intent of section 9. The general finding of the district court that the Company acted in good faith in the matter of salary payments was made before and without reference to the Portal-to-Portal Act and is not a sufficient basis for us to direct the dismissal of the claims, as we have been moved to do by the Company. *The alternative motion that the judgment be set aside and the case remanded for re-examination under the new legislation we will grant.* Carpenter v. Wabash Railway Co., 309 U. S. 23, 27, 60 S. Ct. 416, 84 L. Ed. 558; Alaska Juneau Gold Mining Co. v. Robertson, 331 U. S. 793, 67 S. Ct. 1728; 149 Madison Ave. Corp. v. Asselta, 331 U. S. 795, 67 S. Ct. 1726."

The Adams case was submitted to a court of six Fifth Circuit Judges all of whom concurred. Judge Waller (concurring in part and dissenting in part) said at page 1015 of 164 F. 2d:

"I concur, also, in the conclusion that under the Portal-to-Portal Act of 1947, Chapter 52, Public Law 49—enacted since this case was decided by the lower court—the judgment should be reversed in order that the lower court may consider the case in the light of that Act."

In Webster-Brinkley Co. v. Belfield, March 12, 1948, 9 Cir., Wash., 166 F. 2d 814, 815, 14 Labor Cases 64,396, on appeal from United States District Court, Western District of Washington, Northern Division, Belfield and another obtained judgment under the FLSA for unpaid overtime and liquidated damages for a combined judgment of $4,347.40 and attorney fees. In reversing and remanding, the per curiam opinion states:

"*This appeal was taken prior to the enactment of the Portal-to-Portal Act of 1947 * * *. The trial court, therefore, had no opportunity to exercise the discretion vested in it by §11 of the Portal-to-Portal Act, 29 U. S. C. A. §260. We think it should have such an opportunity.* Judgment vacated and case remanded with directions to (1) make and file findings on all factual issues, including the issue mentioned above; (2) take such action, if any, as the court deems proper under §11 of the Portal-to-Portal Act." (Italics supplied.)

In Roland Electrical Co. v. Black, August 12, 1947, 4 Cir., Md., 163 F. 2d 417, part of the judgment was reversed and remanded on defendant's appeal. The court said on page 427:

"At the new trial consideration should be given to the effect of section 11 of the Portal-to-Portal Act * * * wherein in any action commenced prior to or after the date of the enactment of the Act to recover minimum wages, overtime compensation or liquidated damages under the Fair Labor Standards Act, the court is given discretion as to the award of liquidated damages if the employer shows to the satisfaction of the court that he was acting in good faith and had reasonable grounds to believe that he was not violating the statute."

In McCloskey & Co. v. Eckhart, November 12, 1947, 5 Cir., Fla., 164 F. 2d 257, 259, 260, a judgment for the employee, Eckhart, was reversed and remanded on the employer's appeal. The court said:

"All overtime earned and all application of the Act was moreover denied by the answer, putting the burden of proof on the plaintiff, and since no sufficient evidence was introduced no case was ever made for the judgment rendered. *But on appeal, by a well-settled rule, we must judge the case by the present law, and not by that existing at the time of the trial. Since the trial the so-called Portal-to-Portal Act * * * approved May 14, 1947, has been passed. * * * The default should be opened and the case tried under the principles we have pointed out, in so far as under the evidence produced they are applicable. The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion."* (Italics supplied.)

In Vigen v. Great Lakes Dredge & Dock Co., October 1, 1947, D. C. Ohio, 79 F. Supp. 410, 13 Labor Cases 64,179, the employer moved to file a supplemental answer under the Portal-to-Portal Act in a suit pending at the effective date of the Act. Plaintiff resisted, urging the employer's delay. The court held the delay was for good cause and that defendant should not be deprived of his right to file supplemental pleadings.

In Asselta v. 149 Madison Ave. Corp., 65 F. Supp. 385, action was begun December 10, 1943, under FLSA, to recover liquidated damages, and complaint was amended in November 1944 to recover for an additional period. Judgment for plaintiffs was entered in that court on March 8, 1946, and was affirmed in the Circuit Court of Appeals June 17, 1946, 2 Cir., N. Y., 156 F. 2d 139. Certiorari was denied by the United States Supreme Court on October 28, 1946, 329 U. S. 764, 67 S. Ct. 124, 91 L. Ed. 658. On December 9, 1946, petition for rehearing was granted, the order of October 28, 1946, denying certiorari was vacated, and the petition for certiorari was granted. The case was argued in the United States Supreme Court on February 11, 1947, and judgment was affirmed by that court on May 5, 1947. 331 U. S. 199, 67 S. Ct. 1178, 91 L. Ed. 1432. After the Portal-to-Portal Act became effective on May 14, 1947, the defendants as petitioners filed motion in the supreme court, on May 29, 1947, for a modification of the judgment. On June 16, 1947, the supreme court entered the following order (331 U. S. 795, 67 S. Ct. 1726, 91 L. Ed. 1822) :

"On consideration of the motion of counsel for the petitioners to modify the judgment of this Court in this case, it is ordered that the judgment of affirmance entered herein on May 5, 1947, 331 U. S. 199, be modified so as to provide that the judgment of the Circuit Court of Appeals is affirmed and the cause is remanded to the District Court with authority in that Court to consider any matters presented to it under the Portal-to-Portal Act of 1947, approved May 14, 1947."

The defendants in that case were seeking to avail themselves of the defenses in sections 9 and 11 of the Portal-to-Portal Act.

In Robertson v. Alaska Juneau Gold Mining Co., May 28, 1945, D. C. Cal., 61 F. Supp. 265, action was brought under FLSA to recover overtime payments and liquidated damages. Judgment for defendant was reversed on plaintiff's appeal and remanded November 5, 1946, 9 Cir., Cal., 157 F. 2d 876. Defendant's petition for writ of certiorari was denied by the supreme court on May 12, 1947, 331 U. S. 823, 67 S. Ct. 1314, 91 L. Ed. 1839, 1840. But on June 16, 1947, defendant's peti-

tion for rehearing was granted, the order of May 12, 1947 denying certiorari was vacated, and petition for certiorari was granted and an order was entered that:

"The judgment of reversal of the United States Circuit Court of Appeals is modified so as to provide that on remand to the District Court that Court shall have authority to consider any matters presented to it under the Portal-to-Portal Act of 1947." (331 U. S. 793, 67 S. Ct. 1728, 91 L. Ed. 1821.)

In the several decisions of the federal courts last cited the district courts thought it in the interest of justice to withhold and delay judgment in causes which had been submitted to them until the remedial legislation about to be enacted by Congress could become effective. The Circuit Courts of Appeals reopened and remanded judgments so that the changes effected by the Portal-to-Portal Act might be given consideration, and the highest court granted rehearings and vacated orders denying certiorari and granted writs of certiorari and remanded cases to the district courts with directions to consider any matters presented under the Act. We find no contrary holdings.

In Ferrer v. Waterman S. S. Corp., April 6, 1948, U. S. D. C. for Puerto Rico, 76 F. Supp. 601 (reported unofficially at 7 WH Cases 893), the court states the issues for decision as follows:

"Two questions arise in the disposition of this motion: (1) did the plaintiffs obtain a vested right by the judgment entered by the District Court on April 25, 1947, and the amended judgment dated May 12, 1947; and (2) are sections 9 and 11 of the Portal-to-Portal Act constitutional."

Judge CHAVEZ sustained sections 9 and 11, permitted the amendment of the answer and granted a rehearing on the special defenses raised under said sections. He ruled that the judgment rendered prior to the enactment of the Portal-to-Portal Act was on appeal to the Circuit Court of Appeals and had not become so vested that Congress under the commerce power could not limit or withdraw rights granted by statute prior to the judgment which was appealed.

We fully agree with the attitudes and the holdings of these courts and it is our judgment that the trial court erred to the prejudice of the defendant in denying its motion for continuance.

IV. What we have said in the preceding division and the decisions there cited sustain our conclusion that it was prejudicial error to deny defendant's motion to vacate the judgments and to grant new trials in all of the actions. The primary and crucial error of the trial court was in the denial of the continuance. The error complained of in the denial of the motion to vacate the judgments and for new trial stems from the denial of the continuance. Had it not been for the latter error the other would have not occurred. The error in denying the continuance in itself entitles the defendant to a reversal. The motion to vacate the judgments and for new trial urges in essence and substance the reasons and grounds of the motion for continuance, in that defendant was entitled to the opportunity to avail itself of any defense or aid afforded by the Portal-to-Portal bill if it became a law, and when the judgments were entered and the trial was discontinued, and the Act had become effective, it had no opportunity to benefit itself by, or make use of, the provisions of the Act. It asked the trial court to vacate the judgments and grant new trials so that it might avail itself of what the Act offered. It asked the opportunity to assert the defensive matters available in sections 2, 9 and 11 of the Act. The trial court overruled the motion and denied defendant the opportunity. It was error with prejudice. In Darr v. Mutual L. Ins. Co., St. Johns River Shipbuilding Co. v. Adams, Webster-Brinkley Co. v. Belfield, Roland Electrical Co. v. Black, McCloskey & Co. v. Eckhart, Vigen v. Great Lakes Dredge & Dock Co., Asselta v. 149 Madison Ave. Corp., Ferrer v. Waterman S. S. Corp., and Robertson v. Alaska Juneau Gold Mining Co., all supra, each defendant asked the court presiding for the opportunity to present any defense available to it under the Portal-to-Portal Act. Each court promptly granted the request. Each was a federal court construing a federal statute.

Appellees stress the contention that because their claims are now merged into judgments they are untouchable by any at-

tack or defense under the Portal-to-Portal Act. Likewise, had the claims in the cases noted just above been evidenced by judgments, some of which had been affirmed or reversed by appellate courts, and in two of them writs of certiorari had been denied, yet each court reopened or modified the judgments to let in defenses under the Portal-to-Portal Act.

It was the conclusion of the trial court that the judgments were final and could not be disturbed or affected by any change which the Portal-to-Portal Act effected in the Fair Labor Standards Act, which was in full force when the judgments were entered. The appellees urge the same proposition in this court. We are unwilling to go so far. In considering this proposition it is well to keep in mind, although appellees do not expressly contend to the contrary, that claims which an employee may have to overtime pay or liquidated damages, based solely and purely on the Fair Labor Standards Act of 1938, and particularly sections 206, 207 and 216(b) thereof, and not on a contract with his employer, are not "vested rights" protected by the Fifth Amendment to the Constitution of the United States. They are not contract rights or common-law rights. They are strictly statutory rights, arising under a statute enacted in the interest of commerce by Congress under the plenary and paramount power granted it by the commerce clause of the Constitution, Article I, section 8, clause 3. Having the power to enact such a statute, Congress necessarily had the power to limit its scope by amendment, or to repeal it, if in its supreme judgment it did not accomplish the object intended because of inherent defect, or because of misinterpretation by the judiciary of its purpose, or of the intent of Congress. And the fact that such statutory change destroys rights incidentally held by private persons in no way restricts the Congressional power. Such rights are not absolute, but conditional, and affected with the "congenital infirmity" that Congress may take them away at any time in the proper exercise of its constitutional power. It is a long-settled rule that a statutory right of action whether based on a state or federal statute may be taken away after it has accrued or is being enforced; and if the repealing

statute contains no saving clause, the rights are lost to the holders. 16 C. J. S., Constitutional Law, 675, section 254.

The President of the United States, under Congressional authority given in June 1933, reduced the standard weight and fineness of the gold dollar. In Norman v. Baltimore & Ohio Ry. Co., 294 U. S. 240, 307, 55 S. Ct. 407, 416, 79 L. Ed. 885, 902, 95 A. L. R. 1352, the plaintiff sued on an interest coupon of a bond providing for payment in gold coin equal to the standard weight and fineness of February 1, 1930. The supreme court in overruling plaintiff's contention, speaking through Mr. Chief Justice HUGHES, said:

"This argument is in the teeth of another established principle. Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them. See Hudson County Water Co. v. McCarter, 209 U. S. 349, 357, [28 S. Ct. 529, 52 L. Ed. 828, 832, 14 Ann. Cas. 560]."

A host of cases could be cited with like holdings. We mention some of them: Kline v. Burke Constr. Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A., N. S., 671; Norris v. Crocker, 13 How. (U. S.) 429, 14 L. Ed. 210; United States v. Schooner Peggy, 1 Cranch (U. S.) 103, 2 L. Ed. 49; Lynch v. United States, 292 U. S. 571, 54 S. Ct. 840, 78 L. Ed. 1434; Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481; Flanigan v. Sierra County, 196 U. S. 553, 25 S. Ct. 314, 49 L. Ed. 597; McNair v. Knott, 302 U. S. 369, 58 S. Ct. 245, 82 L. Ed. 307; State of Louisiana ex rel. Folsom v. New Orleans, 109 U. S. 285, 3 S. Ct. 211, 27 L. Ed. 936; Ewell v. Daggs, 108 U. S. 143, 2 S. Ct. 408, 27 L. Ed. 682; North American Co. v. Securities & Exchange Comm., 327 U. S. 686, 66 S. Ct. 785, 90 L. Ed. 945; United States ex rel. Rodriguez

v. Weekly Publications, 2 Cir., N. Y., 144 F. 2d 186; Bowles v. Willingham, 321 U. S. 503, 64 S. Ct. 641, 88 L. Ed. 892; Knox v. Lee (Legal Tender Cases) 12 Wall. (U. S.) 457, 20 L. Ed. 287; Hepburn v. Griswold, 8 Wall. (U. S.) 603, 19 L. Ed. 513; Western Union Tel. Co. v. Louisville & N. Ry. Co., 258 U. S. 13, 42 S. Ct. 258, 66 L. Ed. 437; National Carloading Corp. v. Phoenix-El Paso Express, Inc., December 15, 1943, 142 Tex. 141, 176 S. W. 2d 564, 178 S. W. 2d 133 (April 1, 1943), certiorari denied 322 U. S. 747, 64 S. Ct. 1156, 88 L. Ed. 1578; Pennsylvania v. Wheeling & Belmont Bridge Co., 1855, 18 How. (U. S.) 421, 15 L. Ed. 435, wherein the Supreme Court of the United States set aside its final decree in so far as it was inconsistent and conflicting with a subsequent Act of Congress; Fleming v. Rhodes, April 28, 1947, 331 U. S. 100, 67 S. Ct. 1140, 91 L. Ed. 1368; Van Horne v. Hines, June 30, 1941, 74 App. D. C. 214, 122 F. 2d 207, certiorari denied January 5, 1942, 314 U. S. 717, 62 S. Ct. 478, 86 L. Ed. 570; Smallwood v. Gallardo, 275 U. S. 56, 62, 48 S. Ct. 23, 24, 72 L. Ed. 152, 156, wherein Mr. Justice HOLMES aptly said: "When the root is cut the branches fall."

Like holdings to those in the cases cited above may be found in numerous decisions of the United States District Courts involving cases like the one before us under the Fair Labor Standards Act of 1938, as amended by the Portal-to-Portal Act of 1947. See Darr v. Mutual L. Ins. Co., 72 F. Supp. 752; Sadler v. W. S. Dickey Clay Mfg. Co., 73 F. Supp. 690; Hart v. Aluminum Co., 73 F. Supp. 727; Bartels v. Sperti, 73 F. Supp. 751; Story v. Todd Houston Shipbuilding Corp., 72 F. Supp. 690; Seese v. Bethlehem Steel Co., 74 F. Supp. 412; Ackerman v. J. I. Case Co., 74 F. Supp. 639; Role v. J. Neils Lbr. Co., 74 F. Supp. 812; Holland v. General Motors Corp., 75 F. Supp. 274; Hollingsworth v. Federal Mining & Smelting Co., 74 F. Supp. 1009; Burfeind v. Eagle-Picher Co., 71 F. Supp. 929; Bateman v. Ford Motor Co., 76 F. Supp. 178, 14 Labor Cases 64,353. All of these cases are cited supra.

V. Did the rendering and entry of the judgments on the day the Portal-to-Portal Act became effective and on the days just preceding render them immune to its provisions? After

the decision in the Mt. Clemens case in June 1946 and up to January 31, 1947, by court records over 1,500 cases had been filed to recover approximately six billion dollars which the plaintiffs had never claimed or expected to receive. No doubt a great many more were filed by May 14, 1947. Perhaps many of them had already gone to judgment. The Act was passed to avoid the economic disaster threatened by these actions, as stated in the preamble section of the Act. Certainly the Congressional purpose would be as effectively defeated by the entry of judgments and executions thereunder in pending actions as by the assertion and collection of claims in new or pending actions whether through the threat of continued legal proceedings or the actual taking and enforcement of judgments thereafter. If Congress had intended to embrace all pending actions under the Fair Labor Standards Act except where judgments had been rendered it could have readily been effected by the insertion of such a saving clause in the Act. But it did not do so. The words specifying the scope and reach of the Act are all embracing: "In *any* action * * * *commenced prior to* * * * the enactment of this Act." The Act is retrospective as well as prospective. In no other way could Congress have effected its purpose. Congress had the power to bring judgments within the purview of the Act. It clearly appears that it exercised that power. In this case the judgments had just been entered. They were appealable when defendant's motion to vacate them was denied on May 23, 1947. The Act was retroactive as to claims for overtime pay under the Fair Labor Standards Act, unless they were within the exception of section 2 of the Portal-to-Portal Act, and merging the claims into judgments would not preserve them. As claims they were not "vested", and as appealable judgments they were not "vested" and within the protection of the Fifth Amendment. Such is the construction put upon the Act by the Circuit Courts of Appeals and by the United States Supreme Court in the cases noted in Division IV hereof. The supreme court must have been convinced that the Act applied to judgments entered antecedent to the effective date when on June 16, 1947, it modified its final affirming judgment in the Asselta case, supra, entered on May 5, 1947, and

ordered the case remanded to the district court to consider any matters presented to that court under the Act. And likewise in the Robertson case, supra, the supreme court, after denying a writ of certiorari on May 12, 1947—two days before the President signed the Portal-to-Portal Act—on June 16, 1947, the same day of the remand in the Asselta case, the supreme court granted a rehearing and modified the affirming judgment of the Ninth Circuit Court of Appeals so that on remand the district court in California might reopen the case and consider matters under the Portal-to-Portal Act. In these orders the supreme court recognized and gave effect to the clear purpose of the Act and the intention of Congress.

In McNair v. Knott, supra, the supreme court ruled an Act of Congress retroactive in application, though not literally expressed, to carry out the otherwise clearly defined purpose of the legislation. Speaking for the court, Mr. Justice BLACK said at page 372 of 302 U. S., page 247 of 58 S. Ct.:

"One of the chief reasons for the enactment of the amendment was the need for validation of pledges already made. The amendment was designed to meet this need. To determine that Congress did not intend to validate pledge agreements existing when the amendment was passed would greatly limit its curative effect. Such a construction would be an unwarranted departure from the plain intent of this curative and enabling statute."

In the National Carloading Corp. case, supra, 142 Tex. 141, 150, 151, 176 S. W. 2d 564, 569, 570, the general situation was similar to that of this case. In Acme Fast-Freight, Inc. v. United States, D. C. N. Y., 30 F. Supp. 968, affirmed in 309 U. S. 638, 60 S. Ct. 810, 84 L. Ed. 993, it was held that freight forwarders conducting business similar to the appellant (Carloading Corporation) were not common carriers within the purview of the Motor Carrier Act of 1935 and were not entitled to certificates of public convenience. The Interstate Commerce Commission denied appellant's application for a certificate, and also struck its tariffs from the files. Realizing that chaotic conditions would result among freight forwarders from the ruling in the Acme case, the commission repeatedly postponed the effec-

tiveness of its order against appellant, until Congress could pass an amendment to the Interstate Commerce Act relieving freight forwarders from the penalties and liabilities of their past infractions. The appellee, Phoenix-El Paso Express, recovered judgment in the District Court of El Paso County in October 1941 against the appellant for certain freight undercharges. The amendatory immunity Act became effective May 16, 1942. On appeal to the Court of Civil Appeals of Texas (178 S. W. 2d 133) that court reversed the trial court because of the immunity Act. The Supreme Court of Texas affirmed and denied rehearing, and certiorari was denied by the United States Supreme Court, 322 U. S. 747, 64 S. Ct. 1156, 88 L. Ed. 1578. The Texas Supreme Court said:

"The plaintiff asserts that it has a vested right in the recovery herein and urges that to give a retroactive effect to the provision is violative of the Fifth Amendment of the Constitution of the United States, which prohibits deprivation of property without due process of law. With this contention we cannot agree. We are here dealing with the exercise by Congress of a power conferred by the Federal Constitution to regulate interstate commerce. The provisions of the Fifth Amendment may not be invoked to obstruct a national policy which Congress has the power to adopt. * * * If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws upon which they are based, these individuals are left without any remedy at law to enforce their claims; and if final relief has not been granted before the repeal goes into effect it cannot be granted thereafter, *even if a judgment has been entered and the cause is pending upon appeal.* The general rule is that when such law is repealed without a saving clause, it is considered, except as to transactions passed and closed, as though it had never existed. Lewis' Sutherland on Statutory Construction, 2nd Ed. 544, Sec. 284; ibid 548, Sec. 284; Phil H. Pierce Co. v. Watkins, 114 Texas 153, 263 S. W. 905; * * * South Carolina v. Gaillard, 101 U. S. 433, 25 L. Ed. 937; 16 C. J. S. [Constitutional Law] 646, Sec. 223; 6 R. C. L. 309, Sec. 296." (Italics supplied.)

The above quotation is set out with approval in Hollingsworth v. Federal Mining & Smelting Co., supra, 74 F. Supp. 1009, 1020.

While denial of certiorari is not the equivalent of an affirmance, the fact that the decision of the Texas Supreme Court fortified itself so thoroughly with holdings of the United States Supreme Court gives additional significance to the latter's denial of review.

 A final judgment does not alter the intrinsic character of the rights which it evidences. As said by the most able Mr. Justice MILLER in Blount v. Windley, 95 U. S. 173, 176, 24 L. Ed. 424, 425:

"The judgment itself presupposes, and is founded on, some antecedent obligation or contract, and is only a higher evidence of that contract, because it now has the sanction of the judicial determination of its validity and amount by a court of law. The essential nature and character of the contract remains unchanged; and, in deciding how far it may be affected by legislation, we must look mainly to the original contract."

In Pacific Mail Steamship Co. v. Joliffe, 2 Wall. (U. S.) 450, 466, 17 L. Ed. 805, 810, the opinion of the court, because of the different fact questions involved has no application to the case at bar, and is definitely distinguishable therefrom, and so we quote from the persuasive dissent of Mr. Justice MILLER:

"A judgment is only one of the steps in the progress of a suit by which the plaintiff, if successful, obtains what he is seeking. It only *declares* the right of the party, but does not create it. It may be set aside or reversed * * *. If the claim on which he proceeded was a vested right, it remains so after judgment; not because of the judgment, but because it existed before, and the judgment only ascertains that fact, and enables him to enforce it. If the judgment was founded on a statute right, it still only declares that on the facts as the law then stood, the plaintiff was entitled to recover; but that right is no more sacred or no more protected from legislative action than before. If there is such a thing as a vested right in a

statute penalty, it must become vested either when the facts occur which give the right, or when the plaintiff makes his claim to the benefit of the statute by commencing an action for the sum which the law allows."

Fleming v. Rhodes, 331 U. S. 100, 102, 107, 67 S. Ct. 1140, 1141, 1144, 91 L. Ed. 1368, 1370, 1373, 1374, was an appeal by plaintiff, as Temporary Controls Administrator, against Texas sheriff and certain landlords from an interlocutory order of the United States District Court for the Northern District of Texas denying preliminary injunctions to stop evictions of tenants under state judgments recovered by landlords in suits for the restitution of leased property without the certificates required by the Rent Regulation for Housing. The judgments were recovered after June 30, 1946, the termination date of the Emergency Price Control Act and before July 25, 1946, the date of the approval by the president of the Price Control Extension Act. In reversing the judgment on a direct appeal, the supreme court said:

"The decision of the district court * * * was based on the unconstitutionality, as applied to the state judgments, of that portion of §18 of the Price Control Extension Act of July 25, 1946, that declared, 'The provisions of this Act shall take effect as of June 30, 1946, . . .'. This provision the Court thought was unconstitutional (1) because the words affected the state judgments retroactively by bringing them under the Extension Act and (2) because the vested rights, created by the prior judgments in the landlords * * * could not be destroyed by subsequent legislation. Apparently it was felt that the due process clause of the Fifth Amendment forbade such regulation of the incidents of judgments. * * * Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it other wise the paramount powers of Congress could be nulli-

fied by 'prophetic discernment.' [Citing cases.] *The rights acquired by judgments have no different standing."* (Italics supplied.)

See, also, Wright v. Union Central L. Ins. Co., 304 U. S. 502, 58 S. Ct. 1025, 82 L. Ed. 1490; Paramino Lumber Co. v. Marshall, 309 U. S. 370, 60 S. Ct. 600, 84 L. Ed. 814.

The rule of the above cases is the general rule. The position of the trial court and of the plaintiffs that the judgments rendered barred the defendant from further action and relief is without sound foundation.

 While the trial court had concurrent jurisdiction with the United States District Courts under the provision of the Fair Labor Standards Act to try cases of the kind involved herein, the decisions of the highest United States courts on federal questions and statutes are binding on state courts.

VI. Plaintiffs contended in oral and printed arguments that the overtime involved was not spent in typical "portal-to-portal" activities—just before starting time and after quitting time— but was during "the period from whistle to whistle." Such period would appear to be "regular time." The record does not definitely show what hours were included in the overtime. We will assume the activities were not of the portal-to-portal kind. Plaintiffs argue:

"Now let us see how and to what extent, if at all, the Portal-to-Portal Act is relevant to this appeal. * * * For instance, all that is said in Part I, Section 1, of the Portal Act is patently directed against those abuses which had arisen in attempting to apply the Fair Labor Standards Act to extraordinary situations where claims were made for compensation and overtime with respect to 'activities' engaged in by the employee before or after the regular day's work. This class of claims was highlighted by the 'Portal-to-Portal' cases, and it is significant that they provided the title for the Act."

The answer of the defendant to this argument is:

"They say, 'Now there has been no claim here that the compensation sought by any appellees accrued except for work done within the workday proper.' * * * The question under

the Portal-to-Portal Act of 1947 is not when the work was done, but whether the overtime spent was a compensable overtime by express contract provision, or by custom or practice. The law is clear and calls for no construction."

We have set out the extent of the combined arguments on the point. Neither side has cited any decision or authority. Each relies upon the language of the statute. It is clear and unambiguous. Just two essentials for compensability are stated— an express provision of a contract, or a custom or practice. They are the requisites of both section 2(a), paragraphs (1) and (2), and of section 2(b). Everything else is eliminated. The kinds of activities are not designated or delimited. But to be compensable or within the jurisdiction of the court, the requirements of subsections (a) and (b) must be met. Even if the activity be "work done within the workday proper", as plaintiffs assert was the case, it must be "under such contract provision or such custom or practice." It is so stated in section 2(b).

In the passage of the Portal-to-Portal Act Congress was attempting to remedy conditions caused by judicial misinterpretation of the Fair Labor Standards Act. Some of the decisions in awarding compensation to employees disregarded existing contracts and customs in making the awards.

The Portal-to-Portal Act makes an express provision in a contract, in effect during the overtime, or a custom or practice in effect at said time the sine qua non of recovery, without regard to the nature of the overtime activity. An implied contract or one in contemplation of law does not comply with the Act. Neither does an agreement which is read into the contract from the Fair Labor Standards Act before its amendment by the Portal-to-Portal Act. That Act "cancelled certain existing claims that were only enforceable by reason of the statute." (The Fair Labor Standards Act.) Hollingsworth v. Federal Mining & Smelting Co., 74 F. Supp. 1009, 1018. In so far as rights given by the Fair Labor Standards Act have not, in fact, become terms of employment contracts they have been withdrawn by the Portal-to-Portal Act. Role v. J. Neils Lbr. Co., supra, 74 F. Supp. 812, 814. A right of recovery traceable to the provisions of the Fair Labor Standards Act, and not to any

contract provision plaintiffs have with the employer is not enforceable. Sadler v. W. S. Dickey Clay Mfg. Co., supra, 73 F. Supp. 690, 692. Like holdings will be found in other decisions cited herein.

The short title or designation of "Portal-to-Portal Act" is not significant, but it is significant that many of the decisions refer to it as the "so-called" Portal-to-Portal Act. The Mt. Clemens case was perhaps the final and impelling force in bringing about the passage of the Act, but the holdings in Brooklyn Sav. Bk. v. O'Neil, 324 U. S. 697, 65 S. Ct. 895, 89 L. Ed. 1296, and D. A. Schulte, Inc. v. Gangi, 328 U. S. 108, 66 S. Ct. 925, 90 L. Ed. 1114, 167 A. L. R. 208, preventing amicable settlements between employer and employee, avoiding a release in full, and an accord and satisfaction of a good faith dispute, and the decision in Missel v. Overnight Motor Transportation Co., 1942, 4 Cir., Md., 126 F. 2d 98, affirmed in 316 U. S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682, that the liquidated damages provision was mandatory regardless of the good faith of the employer or the reasonableness of his attitude, had their part in the inclusion of remedial provisions in the Portal-to-Portal Act.

The reach of the Act extends beyond activities of the Mt. Clemens case type. As said in Seese v. Bethlehem Steel Co., supra, 74 F. Supp. 412, 416:

"It will be noted that the Act in this respect is not limited to portal-to-portal activities as such but defines the essential characteristics of any alleged liability for nonpayment of minimum wages or overtime compensation. *None* are to be compensable 'except an activity which was compensable by either'— contract, custom or practice. Furthermore, while the language includes the word 'except', it seems entirely clear from the whole wording that the *exception is the only activity which is compensable.*"

And in Bateman v. Ford Motor Co., supra, February 27, 1948, D. C. Mich., 76 F. Supp. 178, 180, 14 Labor Cases 64,353, after quoting section 2(a), paragraphs (1) and (2), said:

"These provisos applied to any employer liabilities whether

based on activities prior to or after the Act's enactment, making the Act admittedly retroactive, *and furthermore applying with equal force to claims which under previous decisions might have been considered meritorious as well as to fantastic 'windfalls'* sought by the great majority of these so-called Portal-to-Portal suits." (Italics supplied.)

Under paragraph 2 of the stipulation the overtime in this case was "for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; * * *" and "for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in;" as stated in section 1(a)(4)(5) of the Portal-to-Portal Act.

Plaintiffs pleaded their cases under the Fair Labor Standards Act. They proved them by stipulations and documentary evidence. There is nothing in either tending to show any contract, custom or practice. They will have opportunity, as will the defendant, in the retrial to offer any evidence available and admissible. Any retrial of this case must be under the Fair Labor Standards Act as amended and limited by the Portal-to-Portal Act. It would be premature at this time, and we do not assume by what we have said in this Division to pass upon any matters that may arise in said trial.

VII. Defendant assigned error because of objections sustained to its cross-examination of John Hale, one of the attorneys for plaintiffs, who testified in their behalf as to the reasonableness of the attorney fees chargeable to defendant for plaintiffs' attorneys.

Error is also assigned for the allowance of excessive attorney fees by the court.

In view of our disposition of the appeal we see no good reason, or purpose served, in passing upon these assigned errors.

The thirty judgments entered in the district court after the tenth day of May, 1947 are reversed.—Reversed.

MULRONEY, C. J., and OLIVER, GARFIELD, WENNERSTRUM, MANTZ, SMITH, and HAYS, JJ., concur.

HALE, J., takes no part.